Submitted on record and briefs April 28, affirmed June 14, 2006

STATE OF OREGON,
*Respondent,*

*v.*

KENDALL LEIGH VEDDER,
*Appellant.*

02CR1734FE; A122200

136 P3d 1128

Peter A. Ozanne, Executive Director, Peter Gartlan, Chief Defender, and Susan F. Drake, Senior Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Hardy Myers, Attorney General, Mary H. Williams, Solicitor General, and Seann C. Colgan, Assistant Attorney General, filed the brief for respondent.

Before Haselton, Presiding Judge, and Armstrong and Rosenblum,* Judges.

* Rosenblum, J., *vice* Richardson, S. J.

HASELTON, P. J.

## HASELTON, P. J.

Defendant, who was convicted of various crimes after pleading guilty, appeals, raising several challenges to his sentences on those convictions. Defendant's challenges, under *Blakely v. Washington*, 542 US 296, 124 S Ct 2531, 159 L Ed 2d 403 (2004), to the trial court's imposition of an upward departure sentence, denial of program consideration under ORS 137.750, and imposition of consecutive sentences are all unpreserved, and we decline to review them.[1] Defendant further contends that the imposition on some counts of sentences of 240 months' post-prison supervision (PPS) minus time served was unlawful, as exceeding the maximum term permitted under OAR 213-012-0020. We conclude that, in the circumstances presented here, the maximum term of PPS for certain crimes is determined by reference to ORS 144.103(1), and not OAR 213-012-0020. Accordingly, we affirm.

The material facts are undisputed. Defendant pleaded no contest to one count of attempted aggravated murder, ORS 163.095 (Count 8), and pleaded guilty to one count of first-degree rape, ORS 163.375 (Count 9), and two counts of first-degree sodomy, ORS 163.405 (Counts 10 and 11). Defendant committed each of those crimes on June 9, 2002, when he broke into the victim's home, strangled her into unconsciousness, and then, when she regained consciousness, sodomized her, raped her, and then again sodomized her.[2]

The trial court deemed Count 8, the charge of attempted aggravated murder, to be the "most serious offense in terms of sentencing guidelines" and imposed a sentence of 120 months in prison with a PPS term of 36 months.[3]

---

[1] *See, e.g., State v. Gornick*, 340 Or 160, 130 P3d 780 (2006); *State v. Vigil*, 197 Or App 407, 106 P3d 656, *adh'd to as modified on recons*, 199 Or App 525, 112 P3d 441, *rev den*, 339 Or 156 (2005); *State v. Fuerte-Coria*, 196 Or App 170, 100 P3d 773 (2004), *rev den*, 338 Or 16 (2005).

[2] Defendant also pleaded guilty to one count of attempted first-degree rape involving a separate victim and a separate incident. The court imposed a sentence of 18 months' incarceration followed by 120 months' PPS minus time served for that crime. That sentence is immaterial to our analysis of defendant's arguments regarding the proper application of OAR 213-012-0020.

[3] The court determined that defendant's sentencing guidelines classification for Counts 8, 9, 10, and 11 was 10-D.

On Counts 9 (first-degree rape), 10 (first-degree sodomy), and 11 (first-degree sodomy), the court imposed consecutive sentences for each count of 100 months' incarceration, with 240 months' PPS minus time served. In imposing the consecutive sentences, the court did not render an explicit finding as to whether the offenses were committed in the course of a single criminal episode.

However, the court did predicate the imposition of consecutive sentences on findings that defendant's crimes were not merely incidental to one another and defendant had indicated a willingness to commit more than one offense, ORS 137.123(5)(a), and that each of defendant's crimes had resulted in a qualitatively different harm to the victim, ORS 137.123(5)(b).[4]

Defendant objected to the terms of PPS imposed on Counts 9, 10, and 11, arguing that, under OAR 213-012-0020(4)(a), the maximum PPS term for those counts was 36 months. OAR 213-012-0020 provides, in part:

"(1)  When the sentencing judge imposes multiple sentences consecutively, the consecutive sentences shall consist of an incarceration term and a supervision term.

"* * * * *

"(4)  The supervision term of the consecutive sentences shall be:

---

[4] ORS 137.123 provides, in part:

"(4) When a defendant has been found guilty of more than one criminal offense arising out of a continuous and uninterrupted course of conduct, the sentences imposed for each resulting conviction shall be concurrent unless the court complies with the procedures set forth in subsection (5) of this section.

"(5) The court has discretion to impose consecutive terms of imprisonment for separate convictions arising out of a continuous and uninterrupted course of conduct only if the court finds:

"(a) That the criminal offense for which a consecutive sentence is contemplated was not merely an incidental violation of a separate statutory provision in the course of the commission of a more serious crime but rather was an indication of defendant's willingness to commit more than one criminal offense; or

"(b) The criminal offense for which a consecutive sentence is contemplated caused or created a risk of causing greater or qualitatively different loss, injury or harm to the victim or caused or created a risk of causing loss, injury or harm to a different victim than was caused or threatened by the other offense or offenses committed during a continuous and uninterrupted course of conduct."

> "(a) The presumptive [PPS] term imposed for the primary offense if the sentence for any offense includes a prison term * * *."

Defendant contended, in substance, that Counts 8, 9, 10, and 11 all arose from the same criminal episode; that the presumptive term for the "primary offense," attempted aggravated murder (Count 8), was 36 months; and that, consequently, the PPS term for the other, consecutively sentenced counts could not exceed 36 months.

The trial court rejected that argument, concluding that, with respect to the offenses specifically identified in ORS 144.103(1), that statute, which was enacted after OAR 213-012-0020,[5] controlled. ORS 144.103(1) provides, in part:

> "Except as otherwise provided in ORS 137.765, any person sentenced to a term of imprisonment for violating or attempting to violate ORS 163.365, 163.375 [first-degree rape], 163.395, 163.405 [first-degree sodomy], 163.408, 163.411, 163.425 or 163.427 shall serve a term of post-prison supervision that shall continue until the term of the post-prison supervision, when added to the term of imprisonment served, equals the maximum statutory indeterminate sentence for the violation."

In this case, the maximum statutory indeterminate sentence for each of the crimes charged in Counts 9, 10, and 11, all Class A felonies, was 240 months. *See* ORS 161.605.

On appeal, defendant reiterates his argument that the PPS terms for Counts 9, 10, and 11 could not exceed 36 months. The state responds, alternatively, that (1) OAR 213-012-0020 is inapposite because that provision applies only to consecutive sentences imposed for crimes committed during a "single criminal episode,"[6] and "Count 8 does not arise from the same criminal episode as Counts 9, 10, and 11"; and (2) in all events, ORS 144.103, and not OAR 213-012-0020, controls

---

[5] The sentencing guidelines, including the original version of OAR 213-012-0020 (*formerly numbered* OAR 253-12-020), were approved by the legislature in 1989, Or Laws 1989, ch 790, § 87, "giving them the authority of statutory law." *State v. Langdon*, 330 Or 72, 74, 999 P2d 1127 (2000). ORS 144.103 was enacted in 1991. *See* Or Laws 1991, ch 831, § 1.

[6] *See, e.g., State v. Miller*, 317 Or 297, 305-06, 855 P2d 1093 (1993); *State v. Sparks*, 150 Or App 293, 296, 946 P2d 314 (1997), *rev den*, 326 Or 390 (1998).

with respect to the imposition of PPS for various sex crimes, including when convictions for those crimes, arising from a single criminal episode, give rise to consecutive sentences. In particular, with respect to its second contention, the state asserts:

"The legislative intent behind [ORS 144.103(1)] is clear from its plain meaning: to insure that individuals who commit sexual assault crimes are sentenced to an extended term of post-prison supervision. Defendant argues, essentially, that he is exempt from the operation of this statute because he committed a more serious offense *in addition to* offenses that fall within the terms of the statute and, per operation of OAR 213-012-0020, that more serious offense determines the length of his post-prison supervision. In other words, he asks this court to find that he is not subject to the extended term mandated by ORS 144.103 because in addition to committing three crimes that fall within the terms of that statute he also attempted to murder the victim. It strains credulity to imagine that the legislature intended to make such an exception."

(Emphasis in original.)

We do not address the state's first argument because the second is conclusive. Even assuming, without deciding, that Counts 8, 9, 10, and 11 all arose from the same criminal episode,[7] ORS 144.103, and not OAR 213-012-0020, controls in this case.

OAR 213-012-0020 and ORS 144.103 are both unambiguous; none of their operative terms, when viewed in pertinent context, is subject to more than one plausible construction. *See PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-11, 859 P2d 1143 (1993). Further, in the circumstances presented here, each provision's unambiguous application yields different results: Under OAR 213-012-0020, the PPS terms for Counts 9, 10, and 11 cannot exceed 36 months; under ORS 144.103, the PPS terms on those counts must be no less than the maximum statutory indeterminate sentence

---

[7] The trial court, at least implicitly, determined that all of those counts pertained to a single "continuous and uninterrupted course of conduct." ORS 137.123(5). If the court had determined otherwise, there would have been no need for the court to have rendered findings under ORS 137.123(5) before imposing consecutive sentences. *See* 206 Or App at 427.

(240 months for Class A felonies) minus time served. Consequently, our inquiry reduces to which of the two provisions controls.

Given the irreconcilable conflict between the provisions, as applied in these circumstances, it is initially tempting, at *PGE*'s first level, to resort to the statutory maxim that, "when a general and particular provision are inconsistent," the latter controls. ORS 174.020(2); *see also PGE*, 317 Or at 611. However, here, as in many other cases, the application of that maxim becomes a "circular exercise." *City of Lowell v. Wilson*, 197 Or App 291, 306-07, 105 P3d 856, *rev den*, 339 Or 406 (2005). Is OAR 213-012-0020 more "particular" in these circumstances because, although it does not refer specifically to the terms of PPS for sentences for sex crimes, it explicitly pertains to the maximum PPS term when the court imposes consecutive sentences for crimes arising out of a single criminal episode? Or is ORS 144.103 more "particular" because, although it does not refer to PPS terms in the context of consecutive sentences, it does specifically address the PPS terms for sentences for sex crimes? *See generally Oregonians for Sound Economic Policy v. SAIF*, 187 Or App 621, 631, 69 P3d 742, *rev den*, 336 Or 60 (2003) (noting that the "particular controls over the general" maxim is "subject to manipulation": "[T]he same statutes may be characterized as specific or general depending on which features a court chooses to emphasize.").

Nevertheless, a second principle of statutory construction is instructive: "If earlier and later statutes are in irreconcilable conflict, then the earlier must yield to the later by implied repeal" or amendment. *Anthony et al. v. Veatch et al.*, 189 Or 462, 481, 220 P2d 493, 221 P2d 575 (1950); *see also State ex rel Huddleston v. Sawyer*, 324 Or 597, 604-05, 932 P2d 1145, *cert den*, 522 US 994 (1997) (describing doctrine but concluding that it was inapposite because the sentencing guidelines and 1994 Ballot Measure 11 were not in "plain, unavoidable and irreconcilable" conflict).

As applied to the circumstances presented here, OAR 213-012-0020 and ORS 144.103(1) *are* in "plain, unavoidable and irreconcilable" conflict. They yield contradictory results. Accordingly, although repeal or amendment by

implication is not favored, *see State ex rel Huddleston*, 324 Or at 604, the latter controls.

We note finally that, as the state urges, that result comports with the legislature's manifest intent in enacting ORS 144.103 in 1991. The legislative history is replete with references expressing concerns about the potential for recidivism among persons who commit sex crimes and the determination that such persons should be subject to continuing, extended supervision beyond the time otherwise prescribed under the sentencing guidelines. *See, e.g.*, Minutes, House Committee on Judiciary, HB 2543, Feb 19, 1991 (testimony of Rep Kevin Mannix; testimony of Jim McIntyre, Oregon State Sheriffs' Association; testimony of Stan Robinson, Oregon State Sheriffs' Association). Given that intent, it would be, as the state suggests, incongruous to construe and apply OAR 213-012-0020 and ORS 144.103(1) in such a way that defendant, who committed egregious sex crimes, would be subject to a much shorter period of PPS than that prescribed in ORS 144.103(1) because he *also* attempted to murder his victim.

The trial court correctly imposed sentences on Counts 9, 10, and 11 in accordance with ORS 144.103(1).

Affirmed.