Argued and submitted March 5; decision of Court of Appeals affirmed, judgment of circuit court vacated, and case remanded to circuit court for further proceedings consistent with Court of Appeals decision in *State v. Kragt*, 304 Or App 537, 467 P3d 830 (2020), September 30, 2021

STATE OF OREGON,
*Respondent on Review,*

*v.*

RANDALL JAY KRAGT,
*Petitioner on Review.*

(CC CR99474) (CA A168649) (SC S067872)

495 P3d 1233

Defendant pleaded guilty to three counts of first-degree sodomy. At sentencing, defendant argued that, under ORS 144.103(1), the trial court should only impose one post-prison supervision (PPS) term for all three counts, as opposed to a PPS term for each count. The trial court disagreed, and sentenced defendant to a PPS term for each count. The Court of Appeals affirmed. *Held*: Under ORS 144.103(1), a trial court must impose a PPS term for each qualifying offense.

The decision of the Court of Appeals is affirmed. The judgment of the circuit court is vacated, and the case is remanded to the circuit court for further proceedings consistent with the Court of Appeals decision in *State v. Kragt*, 304 Or App 537, 467 P3d 830 (2020).

En Banc

On review from the Court of Appeals.*

Jon Zunkel-deCoursey, Assistant Attorney General, Salem, argued the cause and filed the brief for respondent on review. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Kyle Krohn, Deputy Public Defender, Office of Public Defense Services, Salem, argued the cause and filed the briefs for petitioner on review. Also on the brief was Ernest G. Lannet, Chief Defender.

_____

* On appeal from Yamhill County Circuit Court, John L. Collins, Judge. 304 Or App 537, 467 P3d 830 (2020).

GARRETT, J.

The decision of the Court of Appeals is affirmed. The judgment of the circuit court is vacated, and the case is remanded to the circuit court for further proceedings consistent with the Court of Appeals decision in *State v. Kragt*, 304 Or App 537, 467 P3d 830 (2020).

**GARRETT, J.**

Oregon's criminal sentencing guidelines establish rules regarding the length of post-prison supervision (PPS). However, ORS 144.103(1) sets forth special PPS rules for certain sex offenses. The question in this case is whether, when sentencing a person convicted of multiple qualifying sex offenses, ORS 144.103(1) requires a trial court to impose a separate term of PPS for each count or whether that statute, instead, requires the trial court to impose a single term of PPS that covers all counts. The Court of Appeals, relying on its own precedent, held that the statute requires a separate term for each count. *State v. Kragt*, 304 Or App 537, 538, 467 P3d 830 (2020) (*Kragt II*). For the reasons that follow, we agree and affirm the decision of the Court of Appeals. As did the Court of Appeals, we vacate the judgment of the circuit court based on a different sentencing issue than the one presented on review, and we remand to the circuit court for further proceedings consistent with the Court of Appeals decision in *Kragt II*.[1]

## I.   BACKGROUND

After defendant pleaded guilty to three counts of first-degree sodomy (Counts 1, 3, and 5), the trial court sentenced him as follows: for Count 1, 60 months in prison; for Count 3, 100 months in prison, concurrent with Count 1; and, for Count 5, 100 months in prison, consecutive to Count 3. For all three counts, the court initially imposed a single PPS term of 240 months, minus the time defendant served in prison. As a result, defendant was effectively sentenced to 200 months in prison and, assuming he served the full term, 40 additional months of PPS.

After defendant was released from prison, the trial court amended the part of the judgment of conviction that had imposed a single PPS term.[2] Defendant appealed,

---

[1] The Court of Appeals vacated and remanded the judgment based on a different sentencing issue than the one presented on review. *Kragt II*, 304 Or App at 538-39. Our ultimate disposition incorporates the Court of Appeals' disposition on that different sentencing issue.

[2] According to defendant, that occurred because the Board of Parole and Post-Prison Supervision "contacted the trial court to request an amended judgment." The record contains no other information in that regard.

arguing that the trial court had erred by amending the judgment without notice and a hearing. The Court of Appeals agreed with that argument and reversed. *State v. Kragt*, 290 Or App 169, 170, 412 P3d 275 (2018) (*Kragt I*).

On remand, defendant argued that ORS 144.103(1) required the trial court to impose a single PPS term for all three counts, as the court had done initially, before amending the judgment. The trial court disagreed and entered a judgment that imposed three PPS terms: 180 months for Count 1, 140 months for Count 3, and 140 months for Count 5.[3]

Defendant appealed again, arguing that ORS 144.103(1) requires a single term of PPS regardless of the number of counts. In a per curiam opinion, the Court of Appeals rejected that argument, relying on its decisions in *Norris v. Board of Parole*, 237 Or App 1, 238 P3d 994 (2010), *rev den*, 350 Or 130 (2011), and *Delavega v. Board of Parole*, 222 Or App 161, 194 P3d 159 (2008). *Kragt II*, 304 Or App at 538. Defendant petitioned for review, which we allowed.

## II.    APPLICABLE LAW

Before November 1, 1989, convicted defendants were sentenced under the "parole matrix system." *State ex rel Engweiler v. Cook*, 340 Or 373, 380-81, 133 P3d 904 (2006). However, in 1987, "the Oregon legislature authorized the Oregon Criminal Justice Council to develop a set of mandatory felony sentencing guidelines that would establish presumptive sentences for all felonies." *State v. Davis*, 315 Or 484, 486, 847 P2d 834 (1993) (footnote omitted). "At the same time, the legislature created the State Sentencing Guidelines Board (the Board) to serve as the administrative body that would adopt the guidelines in the form of

---

[3] As the Court of Appeals explained, the trial court imposed determinate PPS terms for each crime. *Kragt II*, 304 Or App at 538. The trial court determined defendant's PPS terms for each offense by subtracting the prison term to which defendant had been sentenced for that offense from the maximum indeterminate sentence for the violation. *See id.* On appeal, the Court of Appeals concluded that the trial court had erred by imposing determinate terms of PPS. *Kragt II*, 304 Or App at 538-39. The court explained that "ORS 144.103 requires the imposition of an indeterminate term of PPS, to be computed by the Board of Parole and Post-Prison Supervision once the amount of time a defendant actually spent incarcerated is known[.]" *Id.* at 538. Neither party sought review of that issue; accordingly, this opinion does not address that issue, and our ultimate disposition incorporates the Court of Appeals' disposition of it.

administrative rules." *Id.* (footnote omitted). "In May 1989, the Board completed that task and, in July, the legislature expressly approved the guidelines." *Id.* at 486-87. The guidelines became effective November 1, 1989. *Id.* at 487.

The sentencing guidelines are administrative rules that set forth presumptive sentences for most felony convictions based on the offender's criminal history and the seriousness of the offense. *Id.* at 486-87. The guidelines accomplish that "by creating a grid for establishing the sentence in light of the offender's criminal history and the seriousness of the offense. The vertical axis of the grid is the Crime Seriousness Scale, which classifies the crime of conviction according to its seriousness in relation to other crimes. OAR 213-004-0001(1)." *Engweiler*, 340 Or at 382. The Crime Seriousness Scale sets forth 11 numerical crime categories, with crime category 1 representing the least serious crimes and crime category 11 representing the most serious crimes. OAR 213-004-0002(1); OAR ch 213, app 1.[4] "The horizontal axis of the grid is the Criminal History Scale, which classifies the offender's personal criminal history." *Engweiler*, 340 Or at 382. "Each block on the grid provides the presumptive sentencing range for offenders whose crime and criminal history places them in that block." *Id.*

Despite being administrative rules, the sentencing guidelines are approved by the legislature and have "the authority of statutory law." *State v. Langdon*, 330 Or 72, 74, 999 P2d 1127 (2000); *see also State v. Carlton*, 361 Or 29, 42, 388 P3d 1093 (2017) (noting that the legislature acts "both directly and by approving the Sentencing Guidelines"). And, importantly, "unless otherwise specifically provided by law," a court has a "duty" to impose a sentence in accordance with the sentencing guidelines. ORS 137.010(1). Thus, the legislature and the electorate can supersede the sentencing guidelines by enacting other provisions.

For most felony convictions, the sentencing guidelines provide that the duration of PPS is one year, two years,

---

[4] Several of the administrative rules and statutes discussed in this section of the opinion have been amended since defendant committed his crimes. *See, e.g.*, ORS 137.010; OAR 213-004-0002; OAR 213-005-0002. However, those amendments do not affect the analysis of the issue on review. In this opinion, unless otherwise noted, we refer to the current versions of those rules and statutes.

or three years, as determined by the crime seriousness category of "the most serious current crime of conviction." OAR 213-005-0002(2)(a). However, ORS 144.103, enacted in 1991, provides special PPS rules for certain sex offenses. Subsection (1) of that statute provides:

> "Except as otherwise provided in ORS 137.765 and subsection (2) of this section, any person sentenced to a term of imprisonment for violating or attempting to violate [ORS 163.365 (second-degree rape), 163.375 (first-degree rape), 163.395 (second-degree sodomy), 163.405 (first-degree sodomy), 163.408 (second-degree unlawful sexual penetration), 163.411 (first-degree unlawful sexual penetration), 163.425 (second-degree sexual abuse) or 163.427 (first-degree sexual abuse)] shall serve a term of active post-prison supervision that continues until the term of the post-prison supervision, when added to the term of imprisonment served, equals the maximum statutory indeterminate sentence for the violation." [5]

Thus, the duration of PPS for a qualifying offense under ORS 144.103(1) is different than for most crimes under OAR 213-005-0002. Generally, the maximum term of PPS under the latter is three years.[6] But under ORS 144.103(1), an offender could have a PPS term that is longer. For example, second-degree sodomy has a crime seriousness ranking of 8. OAR 213-017-0004(8). Second-degree sodomy is a Class B felony, ORS 163.395(2), and, as such, has a maximum indeterminate sentence of 120 months in prison, ORS 161.605(2). For a defendant convicted of one count of second-degree sodomy, a Measure 11 crime, the minimum sentence

---

[5] ORS 144.103(1) has been amended since defendant committed his underlying crimes. *See* Or Laws 2013, ch 708, § 31. However, defendant does not contend that that amendment affects our analysis. Accordingly, we cite the current version of ORS 144.103(1).

Relatedly, the record does not clearly indicate when defendant committed each of the underlying crimes. However, because both parties have proceeded on the assumption that ORS 144.103(1) applies to all defendant's convictions, we do so as well.

[6] The maximum PPS term may be less than three years, if a three-year PPS term, when added to the prison term, exceeds the statutory maximum indeterminate sentence for the crime of conviction. OAR 213-005-0002(4). In that situation, the trial court reduces "the duration of post-prison supervision to the extent necessary to conform the total sentence length to the statutory maximum." *Id*.

is 75 months. ORS 137.700(2)(N).[7] In the absence of ORS 144.103(1), assuming that a trial court had sentenced the defendant to 75 months, then, under OAR 213-005-0002, the defendant's PPS term would be a determinate term of 36 months. *See* OAR 213-005-0002(2)(a) (explaining that, when the "most serious current crime of conviction" is a crime seriousness category 8, the PPS term is three years). However, ORS 144.103(1) would require the trial court to impose a longer PPS term—an indeterminate PPS term equal to the "maximum statutory indeterminate sentence," *i.e.*, 120 months, minus "the term of imprisonment served." Thus, assuming that the defendant served an incarceration term of 75 months, the PPS term would be 45 months under ORS 144.103(1).

As the foregoing example illustrates, ORS 144.103(1) can increase the length of PPS that a defendant must serve. As discussed in more detail below, the legislature enacted that statute for the purpose of reducing recidivism among sex offenders.

## III.   DISCUSSION

The issue before this court is whether the trial court erred in imposing separate terms of PPS for each of defendant's counts of conviction for first-degree sodomy, with defendant arguing that ORS 144.103(1) requires a single term of PPS regardless of the number of counts. The interpretative question is potentially a significant one for defendant. Under defendant's interpretation of ORS 144.103(1), he would be required to serve a single PPS term of only 40 months. Defendant reaches that conclusion by subtracting the total time that he served for all three offenses (200 months) from the maximum indeterminate sentence for first-degree sodomy (240 months).[8] In contrast, under the

---

[7] Because second-degree sodomy is a Measure 11 crime, a defendant's *minimum* sentence is established by ORS 137.700, not the sentencing guidelines grid.

[8] We note that defendant's interpretation assumes that the phrase "imprisonment served" in ORS 144.103(1) refers to the total incarceration time served for multiple offenses. However, that question is not presented in this case. When the trial court imposes a PPS term under ORS 144.103(1), the amount of time that a defendant will, in fact, serve is unclear. That is because a defendant who receives "good time" credit may not serve the full incarceration term. In accordance with ORS 144.103(1), the trial court imposes an indeterminate PPS term that is the

state's interpretation, defendant would serve three separate PPS terms concurrently, which would result in serving a total of 180 months of PPS. The state counters that the trial court's sentence was correct: For Count 1, defendant's PPS term is 180 months (the maximum indeterminate sentence of 240 months minus the 60 months of imprisonment on that count); and, for each of Counts 3 and 5, the term is 140 months (the maximum of 240 months, minus 100 months of imprisonment).[9]

As noted, the Court of Appeals held that the trial court correctly imposed separate terms of PPS for each count, relying on its previous decisions in *Delavega* and *Norris*. In *Delavega*, the Court of Appeals construed OAR 213-005-0002(2)(b)(C) (2000) and ORS 144.103(1) in the context of a defendant who had received consecutive sentences for sex offenses covered by the statute. The court concluded that the text of both provisions makes clear that a term of PPS is required "for each violation of the statutes listed in ORS 144.103." 222 Or App at 167. The court began with OAR 213-005-0002(2)(b)(C) (2000), which at the time provided:

> "Notwithstanding section 2(a) of this rule, the following periods of post-prison supervision shall apply:
>
> "* * * * *
>
> "(C)   For an offender sentenced for sexual offenses subject to ORS 144.103, *the period shall be the maximum statutory indeterminate sentence for that violation* less the term of imprisonment served."

(Emphasis added.) The court explained that the use of the singular nouns "sentence" and "violation" in OAR 213-005-0002(2)(b)(C) (2000) was "significant" because those terms

---

difference between the maximum indeterminate sentence for the offense and the time of imprisonment served. Later, when a defendant is released, the board determines the PPS expiration date based on the length of the indeterminate sentence and the term of imprisonment that the defendant served. In this case, we are reviewing the trial court's sentence, not a calculation by the board, and we do not address what the result of the board's calculation should be in this case.

[9] As just noted as to defendant 's argument, the state similarly assumes that "imprisonment served" refers to the time served for each offense. Again, the meaning of "imprisonment served" is not before this court, and nothing in this opinion should be construed as expressing any view about the meaning of that term.

> "refer back to the plural phrase 'sexual offenses subject to ORS 144.103' and indicate that an offender sentenced for any one of the several sexual offenses listed in ORS 144.103 must serve a term of post-prison supervision for that one offense equal to the maximum statutory indeterminate sentence prescribed for the offense minus the term of imprisonment that the offender has served on that offense."

222 Or App at 166. The court then turned to ORS 144.103(1), focusing on the phrase "indeterminate *sentence* for the *violation*" and concluded that that statute, "like OAR 213-005-0002(2)(b)(C), establishes that an offender must serve a term of post-prison supervision equal to the maximum statutory indeterminate sentence minus the term of imprisonment served for each violation." *Id*. Finally, the court considered the petitioner's argument based on OAR 213-012-0020(4)(a), which provides that, when a defendant is sentenced to consecutive sentences and one or more includes a prison term, the supervision term is the "presumptive post-prison supervision term imposed for the primary offense." *Id*. at 167. The petitioner had argued that that language contemplates a single PPS term, but the court rejected that argument, citing *State v. Vedder*, 206 Or App 424, 429-31, 136 P3d 1128 (2006), *rev den*, 342 Or 417 (2007), which held that OAR 213-012-0020 had been impliedly repealed by ORS 144.103. *Id*. Based on *Vedder*, the court reasoned that OAR 213-012-0020 did not apply to the petitioner because he had been convicted of sex crimes listed in ORS 144.103. *Id*.

As noted, *Delavega* dealt with consecutive sentences. Shortly thereafter, in *Norris*, the Court of Appeals considered the same issue in the context of concurrent sentences. The court concluded that the "principle underlying [its] decision in *Delavega*—that the PPS terms on individual convictions must be calculated separately with respect to each conviction—applies with equal force [to concurrent sentences]." *Norris*, 237 Or App at 8. "Accordingly, where ORS 144.103(1) applies, an offender's term of post-prison supervision is calculated by reference to the maximum indeterminate sentence applicable to *each* crime of conviction[,] minus the amount of time the offender was actually incarcerated *on that crime*." *Id*. (emphases in original).

In sum, the Court of Appeals has construed OAR 213-005-0002(2)(b)(C) and ORS 144.103(1) as requiring a PPS term to be calculated and imposed for each crime of conviction. Accordingly, the Court of Appeals rejected defendant's argument here that the trial court had erred in imposing multiple PPS terms for each of his offenses. *Kragt II*, 304 Or App at 538.

On review, defendant argues that the Court of Appeals misconstrued the relevant provisions in *Delavega* and *Norris*. That argument raises a question of statutory interpretation that we resolve by considering the text, context, and any helpful legislative history. *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009).

A.   *Text*

We begin with the text. ORS 144.103(1) provides:

> "Except as otherwise provided in ORS 137.765 and subsection (2) of this section, any person sentenced to a term of imprisonment for violating or attempting to violate ORS 163.365, 163.375, 163.395, 163.405, 163.408, 163.411, 163.425 or 163.427 shall serve a term of active post-prison supervision that continues until the term of the post-prison supervision, when added to the term of imprisonment served, equals the maximum statutory indeterminate sentence for the violation."

ORS 144.103(1) makes clear that it applies to "any person sentenced to a term of imprisonment for violating or attempting to violate [one of the eight sex offense statutes listed in the subsection]." It also makes clear that such a person shall serve "a term of active post-prison supervision that continues until the term of the post-prison supervision, when added to the term of imprisonment served, equals the maximum statutory indeterminate sentence for the violation." In other words, the length of a PPS term is the time that remains after the duration of "the term of imprisonment served" is subtracted from the "maximum statutory indeterminate sentence for the violation." The text does not expressly address how many PPS terms a defendant should receive if sentenced for multiple qualifying offenses. By providing for service of "a term" of PPS to be calculated by reference to the "maximum statutory indeterminate sentence for

*the violation*," however, the text seems to contemplate that the sentence for each "violation" will include a PPS term. (Emphasis added.)

Defendant urges a different reading, arguing that the text, by referring to "any person," contemplates that a term of PPS will attach to an offender, not a count of conviction. That is, the subject of the sentence is the "person," not the offense. The state responds that the legislature used the phrase "any person" simply to show that ORS 144.103(1) applies to any offender who commits certain sex crimes.[10] Thus, the fact that the subject of ORS 144.103(1) is "any person" does not mean that the legislature intended to limit the number of PPS terms imposed in a judgment.

The state's interpretation is more persuasive. Defendant is correct that, as a grammatical matter, the "person" is the subject of subsection (1), but that sheds little light on the question whether a trial court should impose a term of PPS on each count. The more natural reading of the text is that the legislature intended for "any person" to simply describe the category of offenders eligible for the PPS term set forth in the remainder of the text, namely, any person who is "sentenced to a term of imprisonment for violating or attempting to violate ORS 163.365, 163.375, 163.395, 163.405, 163.408, 163.411, 163.425 or 163.427."

In sum, the text, though not definitive, strongly suggests that a PPS term will attach to any "violation."

B.  *Context*

Context includes "other provisions of the same or related statutes, the pre-existing statutory framework within which the statute was enacted, and prior opinions of this court interpreting the relevant statutory wording." *Ogle v. Nooth*, 355 Or 570, 584, 330 P3d 572 (2014). Here, both parties rely on the 1989 version of sentencing guidelines to support their positions. The 1989 version of the sentencing

---

[10] In support of that reading, the state cites several 1989 sentencing statutes, namely, ORS 137.071 (1989), ORS 137.122(2) (1989), ORS 137.123(2) and (3) (1989), where the subject of the statutes was either "the person" or the "defendant" who committed the crimes. The state contends that, even though the "person," as opposed to the offense, is grammatically the subject of those statutes, they nonetheless contemplate the imposition of a separate sentence for each offense.

guidelines predated the enactment of ORS 144.103(1) in 1991 and is therefore relevant context. Moreover, as noted, the sentencing guidelines are the default sentencing framework unless ORS 144.103(1) "specifically" provides otherwise. ORS 137.010(1).

However, we pause to note that the parties' arguments regarding the meaning of the sentencing guidelines raise questions about how those rules would apply in circumstances not squarely presented in this case, which is governed by ORS 144.103(1). Nonetheless, the parties agree, as do we, that the 1989 guidelines are relevant for present purposes only as context for understanding what the legislature likely intended when it enacted ORS 144.103(1) two years later, and we limit our focus accordingly. Moreover, that inquiry is guided by what the guidelines and their explanatory comments say on their face, as the legislature did not have the benefit of any appellate decision interpreting them when it enacted ORS 144.103(1) in 1991.

With the question so framed, the state advances a more plausible account of how the 1991 Legislative Assembly likely would have understood the sentencing guidelines to operate. First, as general context, the state points to rules that reinforce a general notion that each "conviction" receives its own "sentence," including a term of PPS. For example, *former* OAR 253-13-001(1) (1989), *renumbered as* OAR 213-013-0001 (1996), sets forth the requirements for the sentencing report that is required for each case resulting in at least one felony conviction. *See Oregon Sentencing Guidelines Implementation Manual* 67 (1989) (explaining that a sentencing report is required for "each case resulting in at least one felony conviction under the guidelines system").[11] That rule then specifies that the sentencing report should contain a description of the term of PPS "imposed for each crime of conviction":

"(3)   The sentencing report shall provide the following information about the sentence *imposed for each crime of conviction*:

---

[11] The *Oregon Sentencing Guidelines Implementation Manual* (guidelines manual) "contains the official commentary to the guidelines and provides important legislative history to aid our interpretation of the relevant guidelines provisions." *State v. Lykins*, 357 Or 145, 155, 348 P3d 231 (2015).

"(a)   a description of the sentence imposed, including:

"(A)   the prison term of incarceration and *the term of post-prison supervision*[.]"

(Emphases added.) Similarly, *former* OAR 253-13-010(3)(a) (1989), *renumbered as* OAR 213-013-0010 (1996), sets forth the requirements for a presentencing report and, in part, provides that each report shall include:

"(3)   A proposed grid block classification for each crime of conviction and the presumptive sentence for *each crime of conviction*.

"(a)   If the proposed grid block classification is a grid block above the dispositional line, the presentence report shall state the presumptive prison term range and the *presumptive duration of post-prison supervision*."

(Emphases added.) By providing that the various reports shall state either the PPS term "imposed for each crime of conviction" or the presumptive PPS term for each crime of conviction, the sentencing guidelines suggest that a PPS term is imposed for each crime of conviction.

More directly on point, the state relies on a different rule, *former* OAR 253-12-040(1) (1989), *renumbered as* OAR 213-012-0040 (1996), which states in part that, "[i]f the offender has been sentenced to *multiple terms* of post-prison supervision, the terms of post-prison supervision shall be served as a single term." (Emphasis added.) The state also points to the following statement in the guidelines manual:

"Whenever an offender is serving more than one term of post-prison supervision at a single time, the terms shall be treated as a single term of supervision. Consequently, the maximum sanction for supervision violations is limited by [*former*] OAR 253-11-004. This limitation on the maximum revocation sanction applies regardless of how many terms of post-prison supervision are being served by the offender. *This limitation even applies when the separate terms of post-prison supervision have been imposed in separate cases*."

*Oregon Sentencing Guidelines Implementation Manual* 118 (1989) (emphasis added). According to the state, the quoted language shows that, at the time when the legislature enacted ORS 144.103(1) in 1991, it would have understood

the sentencing guidelines to allow for multiple PPS terms (to be served as a single term). Moreover, because the commentary states that *former* OAR 253-12-040(1) (1989) "even applies" when a defendant has received multiple PPS terms in "separate cases," it follows that the rule also anticipates situations where a defendant receives separate terms of PPS in a single case.

The state is correct that *former* OAR 253-12-040(1) (1989) expressly contemplates situations in which an offender will be serving "multiple terms of post-prison supervision," providing that they should be served as a "single term." Defendant rejoins that that rule does not *authorize* the imposition of multiple terms; it only addresses situations where they exist. That may be a correct literal reading, but the distinction is not a particularly salient one when evaluating the rule as context for the statutory construction question now before us. The important point is that, if the legislature, in enacting ORS 144.103(1) in 1991, would have understood that multiple PPS terms could exist for an offender, then that context supports rather than undercuts the natural reading of the statutory language, discussed above.[12]

To be sure, defendant identifies other contextual provisions that create ambiguity. First, defendant points to *former* OAR 253-05-002 (1989), *renumbered as* OAR 213-005-0002 (1996), which, in part, provides:

"(2)   The duration of the post-prison supervision shall be determined by the crime seriousness category of the most serious current crime of conviction:

"*****

"(3)   The term of post-prison supervision shall begin upon completion of the offender's prison term ***. ***

"(4)   The term of post-prison supervision, when added to the prison term, shall not exceed the statutory maximum sentence for the crime of conviction. When the total

---

[12] Defendant also hypothesizes that the wording in *former* OAR 253-12-040(1) (1989) is meant to address only situations in which offenders are serving multiple PPS terms imposed in different cases or when a trial court erroneously imposes multiple PPS terms in a single case. However, that suggestion is difficult to square with the italicized part of the explanatory comment in the guidelines manual quoted above, which clearly implies that "separate cases" are just one category of situations in which separate terms can be imposed.

duration of any sentence (prison incarceration and post-prison supervision) exceeds the statutory maximum sentence, the sentencing judge shall first reduce the duration of post-prison supervision to the extent necessary to conform the total sentence length to the statutory maximum."

Defendant argues, not implausibly, that subsection (2) calls for a trial court in a multi-count case to impose a single PPS term calculated by reference to the most serious count. But the state has a response that is not implausible, either: The state argues that the rule as a whole is consistent with the idea encapsulated in *former* OAR 253-12-040 (1989)—namely, that a term of PPS is *imposed* on each count of conviction, though an offender *serves* a single term. In the state's view, that is why subsection (2) of *former* OAR 253-05-002 (1989) refers to the "duration" of PPS while the other subsections refer to a "term" of PPS. For example, subsection (4) provides that "[t]he term of post-prison supervision, when added to the prison term, shall not exceed the statutory maximum indeterminate sentence for the crime of conviction"—wording that, as the state points out, once again seems to associate a "term" of PPS with every "crime of conviction."

Defendant also relies on *former* OAR 253-12-020 (1989), *renumbered as* OAR 213-012-0020 (1996), which pertains to consecutive sentences and provides, in part:

"(1)   When the sentencing judge imposes multiple sentences consecutively, the consecutive sentences shall consist of an incarceration term and a supervision term.

"* * * * *

"(3)   The supervision term of consecutive sentences shall be:

"(a)   The presumptive post-prison supervision term imposed for the primary offense if the sentence for any offense includes a prison term[.]"

As defendant emphasizes, subsection (1), too, makes repeated reference to "an incarceration term" and "a supervision term" in the singular. And the fact that the word "each" does not appear between "shall" and "consist" could indicate that a single "supervision term" exists for the consecutive

sentences. Defendant further reasons that, consistent with what subsection (1) seems to say, paragraph (3)(a) contemplates a single PPS term in a case where an offender receives consecutive sentences, any of which includes a term of incarceration. The guidelines manual confirms that understanding by explaining that, under paragraph (3)(a), the PPS term for the consecutive sentences is a "single term." *Oregon Sentencing Guidelines Implementation Manual* 115 (1989) (explaining that, in a hypothetical example of three separate burglary convictions, "the supervision part of the consecutive sentences is a *single term* of post-prison supervision" (emphasis added)).

At oral argument, the state argued that *former* OAR 253-12-020(3)(a) (1989) provides directions to the Board of Parole and Post-Prison Supervision (board), not trial courts, for calculating the duration of PPS and for setting the PPS expiration date when a defendant is released from prison. The state concedes that paragraph (3)(a) directs the board to require a defendant to *serve* only a single term of PPS based on the primary offense, but it argues that the rule does not address how many terms are to be *imposed*.

We note that, even assuming (without deciding) that defendant is correct that paragraph (3)(a) of *former* OAR 253-12-020 (1989) is directed to what the trial court does at sentencing rather than to what the board does later, that rule is still limited by its terms to consecutive sentences. Thus, defendant's interpretation, if correct, does not necessarily mean that the legislature would have understood multiple PPS terms to be precluded in other contexts.[13]

---

[13] Although the parties have not discussed the point, a possible reason why the drafters of the guidelines could have approached the question of PPS terms differently for consecutive sentences has to do with resource limitations. *See* Or Laws 1987, ch 619, § 2 ("In developing the sentencing guidelines the [Oregon Criminal Justice Council] shall take into consideration factors relevant to [the] establishment of appropriate sentences, including * * * the effective capacity of state and local correctional facilities and other sentencing sanctions available."). To account for that resource issue, the drafters of the guidelines made clear in *former* OAR 253-02-001(1) (1989), *renumbered as* OAR 213-002-0001 (1996), that resources were a driving consideration behind the guidelines: "The primary objectives of sentencing are to punish each offender appropriately, and to insure the security of the people in person and property, *within the limits of correctional resources provided by the Legislative Assembly, local governments and the people.*" (Emphasis added.)

At bottom, both parties can point to wording in the sentencing guidelines that supports their respective positions. As noted, we decline to resolve ultimate questions regarding the meaning of the various guidelines rules that the parties have cited, beyond what is necessary to infer how the legislature likely understood them when it enacted ORS 144.103(1) in 1991. The provisions that the state cites are consistent with and reinforce the general notion that each count of conviction receives its own sentence, including its own term of PPS. Defendant has identified other provisions that plausibly may be read in a manner that is in tension with that general notion, but the state has put forward contrary interpretations of those rules that are also plausible. On balance, particularly in light of *former* OAR 253-12-040(1) (1989) and the wording in the guidelines manual explaining that provision, we conclude that the legislature likely would have understood in 1991 that multiple terms of PPS could be imposed by a sentencing court in a single case. That conclusion supports the natural reading of the text of ORS 144.103(1), as discussed above.

C.  *Legislative History*

Both parties contend that the legislative history of ORS 144.103(1) demonstrates an intention that the number of PPS terms imposed under that statute would be consistent with what the guidelines otherwise required. As explained below, we have found little helpful evidence in that regard.

The legislative history shows that the 1991 Legislative Assembly enacted ORS 144.103(1) to increase the *length* of PPS. Both parties rely on the testimony of a proponent, Jim McIntyre, who explained that ORS 144.103(1) "extend[ed] the maximum period of time [a sex offender] can currently be held on probation and under [post-prison] supervision." Tape Recording, House Committee on Judiciary, Subcommittee on Crime and Corrections, HB 2543, Feb 19, 1991, Tape 25, Side B (statement by Jim McIntyre). His testimony included an additional indication that ORS 144.103(1) was *not* intended to affect the application and term setting of the maximum statutory times under the sentencing guidelines:

"[McIntyre]: The are a number of statutory enact-ments that are triggered \*\*\* anytime any criminal defen-dant is sentenced. This merely addresses one section of those statutes. *There are statutes and administrative rules that govern the overall application and term setting of max-imum statutory times that will not be affected.*"

Tape Recording, House Committee on Judiciary, Subcom-mittee on Crime and Corrections, HB 2543, Feb 19, 1991, Tape 25, Side B (statement by Jim McIntyre) (emphasis added). The foregoing could be interpreted as suggesting that ORS 144.103(1) would not affect the "statutes and administrative rules that govern the overall application and term setting of maximum statutory times," including the sentencing guideline rules that set forth the number of PPS terms a trial court imposed. *See id.*

Notably, however, in making that statement, McIntyre did not explain which statutes and administrative rules governed the application and term setting of maximum stat-utory times and, in turn, did not specify which rules would remain unchanged. It therefore is far from clear that he had the view that *former* OAR 253-05-002 (1989) and *for-mer* OAR 253-12-020 (1989) would be unaffected by the 1991 legislation. Indeed, because ORS 144.103(1) clearly affected the length of the PPS terms set forth in *former* OAR 253-05-002(2) (1989), McIntyre could not have meant that *for-mer* OAR 253-05-002 (1989) would be entirely unaffected. As such, his testimony is of little assistance in resolving the interpretative question before us, and the legislative history does not otherwise indicate one way or the other whether the number of PPS terms that a defendant would receive under ORS 144.103(1) would be the same as those imposed under the sentencing guidelines.

D.  *Maxims of Statutory Construction*

When the legislature's intent is not clear from the text, context, and legislative history, this court may resort to maxims of statutory construction to resolve the uncer-tainty. *PGE v. Bureau of Labor and Industries*, 317 Or 606, 612, 859 P2d 1143 (1993). In this case, defendant relies on the maxim of avoiding an interpretation that will "lead to an absurd result that is inconsistent with the apparent

policy of the legislation as a whole." *See State v. Vasquez-Rubio*, 323 Or 275, 282-83, 917 P2d 494 (1996) (describing maxim). Specifically, defendant contends that interpreting ORS 144.103(1) to require a trial court to impose separate PPS terms will result in longer PPS terms for offenders who receive relatively shorter prison sentences. He also contends that it will work to the disadvantage of offenders who earn good-time credits and thus ultimately serve less time than the full term imposed.

We do not necessarily disagree that construing ORS 144.103(1) to require a term of PPS for each count may lead, in some cases, to results that are arguably anomalous or inconsistent with policies underlying the sentencing guidelines. *See Norris*, 237 Or App at 12 (holding that statute requires a term of PPS for each conviction, notwithstanding "anomaly" that "petitioner is actually in a worse position by virtue of having committed the least serious of his offenses (which yielded the longer terms of PPS) than he would have been if he had, instead, committed four acts of first-degree sexual abuse"). On the other hand, the state argues that defendant's interpretation of the statute would have its own anomalous consequences.[14] However, the "absurd results canon is best applied sparingly—only when the statute is truly ambiguous *and* the result is truly absurd." *LandWatch Lane County v. Lane County*, 364 Or 724, 741, 441 P3d 221 (2019) (emphasis in original). In this case, where the text strongly supports one reading, where the context supports that reading, and where the legislative history adds no ambiguity, we conclude that resorting to the absurd-results maxim is not appropriate. *See Vasquez-Rubio*, 323 Or at 283 ("When the legislative intent is clear from an inquiry into text and context, or from resort to legislative history, however, it would be inappropriate to apply the absurd-result maxim."). Defendant's policy arguments are more appropriately directed at the legislature.

---

[14] For example, the state points out that, under defendant's interpretation of ORS 144.103(1), a person who is convicted of two counts of first-degree rape, receives consecutive ten-year sentences on the two counts, and serves the full 20 years of incarceration could not be required to serve any PPS at all, because the total period of incarceration would equal the statutory maximum indeterminate sentence of 240 months. The state argues that such a result would contravene the legislative intent to lengthen the periods of PPS for sex offenders.

E.   *Summary of Text, Context, and Legislative History*

Our consideration of the text, context, and legislative history leads us to conclude that a trial court must impose a PPS term for each violation of the statutes listed in ORS 144.103(1). Accordingly, we agree with the Court of Appeals that the trial court did not err in imposing a PPS term for each offense.

Because this decision addresses only the statutory question posed by ORS 144.103(1), we do not definitively resolve when and whether multiple PPS terms are appropriate under the sentencing guidelines. However, as ORS 137.010(1) makes clear, the legislature has authority to set forth sentencing requirements that differ from those set forth in the sentencing guidelines. Here, for the reasons discussed above, ORS 144.103(1) specifically provides that a trial court shall impose a PPS term for each violation of the offenses listed in that subsection. Thus, to the extent that such a construction is inconsistent with the sentencing guidelines, ORS 144.103(1) controls when applicable.

The decision of the Court of Appeals is affirmed. The judgment of the circuit court is vacated, and the case is remanded to the circuit court for further proceedings consistent with the Court of Appeals decision in *State v. Kragt*, 304 Or App 537, 467 P3d 830 (2020).