No. 2                    January 16, 2025                    191

IN THE SUPREME COURT OF THE
STATE OF OREGON

RANDALL J. KRAGT,
*Petitioner on Review,*

*v.*

BOARD OF PAROLE AND
POST-PRISON SUPERVISION,
*Respondent on Review.*

(CA A163421) (SC S070426)

En Banc

On review from the Court of Appeals.*

Argued and submitted March 14, 2024.

Kyle Krohn, Deputy Public Defender, Office of Public Defense Services, Salem, argued the cause and filed the brief for petitioner on review. Also on the brief was Ernest G. Lannet, Chief Defender, Criminal Appellate Section.

Jeff J. Payne, Assistant Attorney General, Salem, argued the cause and filed the briefs for respondent on review. Also on the briefs were Ellen Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

JAMES, J.

The decision of the Court of Appeals and the final order of the Board of Parole and Post-Prison Supervision are affirmed.

_____
* On judicial review from the Board of Parole and Post-Prison Supervision, 325 Or App 688, 529 P3d 1019 (2023).

**JAMES, J.**

In this case, we consider again ORS 144.103(1), which provides, in part:

> "[A]ny person sentenced to a term of imprisonment for violating or attempting to violate [a listed subset of crimes] shall serve a term of active post-prison supervision that continues until the term of the post-prison supervision, when added to the term of imprisonment served, equals the maximum statutory indeterminate sentence for the violation."

In *State v. Kragt*, 368 Or 577, 596, 495 P3d 1233 (2021) (*Kragt I*), we held that, when a defendant is convicted of multiple counts that are covered by ORS 144.103, the statute requires the trial court to impose separate terms of post-prison supervision (PPS) for each conviction. In doing so, we noted that petitioner had assumed that "term of imprisonment served," as used in the statute, meant "the total incarceration time served for multiple offenses." *Id.* at 583 n 8. Due to the posture of that case, we were not required to, nor did we, consider whether petitioner's assumption was correct. *Id.* ("[W]e are reviewing the trial court's sentence, not a calculation by the board, and we do not address what the result of the board's calculation should be in this case.").

This case now presents the issue that we reserved in *Kragt I*: how the Board of Parole and Post-Prison Supervision should calculate petitioner's PPS term and apply it. Specifically, this case presents two questions. First, does "term of imprisonment served," as used in ORS 144.103, refer to the time spent in prison on the particular count for which the term of post-prison supervision is being calculated, or is it a broader term, referring to the total period of incarceration on all counts?[1] Second, and relatedly, if a person is serving consecutive sentences, each of which has a term of PPS under ORS 144.103, does the PPS term on one count begin to run when the term of imprisonment on that count is complete, even when that person remains incarcerated on a consecutive count?

For the reasons that follow, we conclude that "term of imprisonment served," as used in ORS 144.103, refers only

---

[1] In *Kragt I*, we described that broader proposed meaning as the "total incarceration time served for multiple offenses." *Id.* at 583 n 8.

to the time spent in prison on the particular count for which the term of post-prison supervision is being calculated. We also conclude that the term of post-prison supervision on a given count does not begin running while a person remains incarcerated on other counts. Accordingly, we affirm the decision of the Court of Appeals and the board's final order.

## I.   FACTS

On October 25, 1999, petitioner pleaded guilty to three counts of first-degree sodomy: Counts 1, 3, and 5. The parties do not dispute that first-degree sodomy is a crime subject to the PPS calculation requirements set out in ORS 144.103(1).[2] The relevant provision of ORS 144.103 largely turns on a calculation made using two factors: the "maximum statutory indeterminate sentence," and the "term of imprisonment served." The "maximum statutory indeterminate sentence" for first-degree sodomy is 240 months. *See* ORS 163.405(2) (first-degree sodomy is Class A felony); ORS 161.605(1) (the "maximum term of an indeterminate sentence of imprisonment" for a Class A felony is 20 years).

The trial court imposed a 60-month prison sentence on Count 1, a 100-month sentence on Count 3, and a 100-month sentence on Count 5. The 100-month sentence on Count 5 was made consecutive to the 100-month sentence on Count 3, leading to a prospective total prison term of 200 months (not counting other credits to which petitioner may have been entitled). The court also imposed terms of post-prison supervision. As to each count, the trial court's ultimate judgment provided for a term of post-prison supervision equal to "240 months, less the term of imprisonment served."[3]

Petitioner has since completed his prison terms, but the dates on which he completed each prison term

---

[2]   By its terms, the PPS calculation requirements articulated in ORS 144.103(1) apply to convictions for ORS 163.365 (rape in the second degree), ORS 163.375 (rape in the first degree), ORS 163.395 (sodomy in the second degree), ORS 163.405 (sodomy in the first degree), ORS 163.408 (unlawful sexual penetration in the second degree), ORS 163.411 (unlawful sexual penetration in the first degree), ORS 163.425 (sexual abuse in the second degree) or ORS 163.427 (sexual abuse in the first degree).

[3]   The trial court entered a fifth amended judgment, after this court's decision in *Kragt I*.  Both petitioner and the superintendent accept the fifth amended judgment as the relevant one for our purposes.

potentially bear on the length of the PPS term. Petitioner's incarceration began on October 28, 1999. On that date, both his 60-month sentence on Count 1 and his 100-month sentence on Count 3 began running. The 60-month prison term on Count 1 ended on August 25, 2004, while the 100-month prison term on Count 3 ended December 26, 2007. Petitioner's 100-month prison term on Count 5 was consecutive to the 100-month term on Count 3, and so it did not begin to run until petitioner's Count 3 sentence had ended on December 26, 2007. Petitioner was released from prison on April 26, 2016, when his prison term on Count 5 expired.

Petitioner was released to a term of post-prison supervision. In calculating that term, the board relied on two specific premises that petitioner brings into question here. The first premise was that the PPS term for each count should be calculated by subtracting the "term of imprisonment" served, *on that count only*, from the maximum indeterminate sentence for that count. In the board's view, then, the PPS term for Count 1 was 180 months: the 240-month maximum sentence minus the 60 months that petitioner had spent in prison on Count 1. The PPS terms for Counts 3 and 5 were each 140 months (the 240-month maximum minus 100 months served on each of those counts). The second premise was that petitioner's PPS terms would not begin to run until petitioner was released from prison, in April 2016.

Using those premises in its calculation, the board concluded that petitioner's PPS term for Count 1 would run until April 2031 (April 2016 plus 180 months), while his PPS terms for Counts 3 and 5 would run until December 2027 (April 2016 plus 140 months). Here is a visual summary of the board's interpretation:



Petitioner sought administrative review from the board, arguing that the "term of imprisonment served" meant the entirety of his prison sentence on *all* his counts—200 months—and that that number should be subtracted from the 240-month maximum. That would mean a 40-month PPS term, rather than the 180 months calculated by the board on Count 1 and 140 months on Counts 3 and 5. The board rejected that argument, explaining its calculations, including the premises mentioned above.

Petitioner sought judicial review in the Court of Appeals, which also affirmed. *Kragt v. Bd. of Parole & Post-Prison Supervision*, 325 Or App 688, 529 P3d 1019, *adh'd to on recons*, 327 Or App 25, 533 P3d 392 (2023) (*Kragt II*). As relevant here, the Court of Appeals explained, without detailed discussion, that petitioner's arguments were foreclosed by that court's prior precedent. 325 Or App at 689-90.

Petitioner sought review, which we allowed on limited grounds. Specifically, this court limited review to two questions:

"(1)   When the parole board calculates an indeterminate *** PPS term under ORS 144.103(1) for an offender who served time in prison on multiple counts, does the phrase 'term of imprisonment served' in that statute equal the total time that the offender was in prison or, instead, only the time served for the count associated with the PPS term?

"(2)   If the parole board must calculate a separate PPS term for each count under ORS 144.103(1), does each PPS term begin as soon as the offender finishes the associated prison term (even if the offender will remain incarcerated on other counts), or do all the PPS terms begin only upon the offender's physical release from prison?"

## II.   ANALYSIS

Petitioner's arguments require us to interpret the meaning of ORS 144.103. In interpreting a statute, we apply the method first set out in *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993), and later modified by *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009). We consider the text in context, giving relevant legislative history appropriate consideration.

The questions before us are legal, rather than factual. Accordingly, we review the board's decisions for errors of law. ORS 144.335(3) (providing that on a petition for judicial review, decision of board is reviewed pursuant to ORS 183.482(8)); ORS 183.482(8)(a) (stating that a court reviews legal errors for errors of law).

We begin by briefly discussing the operative dates we consider in our analysis. "The Legislature intends that Oregon courts sentence criminal defendants under the statutory scheme in force when a particular criminal act was committed." *State v. Isom*, 313 Or 391, 395, 837 P2d 491 (1992). Here, the indictment in petitioner's case spanned a range of dates—some as early as 1988. Yet in briefing, the parties had cited statutes and administrative rules enacted after 1988. We asked the parties for supplemental briefing addressing what versions of ORS 144.103, and contextual administrative rules, we should consider. Petitioner acknowledged that, while the indictment listed a date as early as 1988, he did not limit the scope of his plea, and he concedes that ORS 144.103 (1991) is the operative version of the statute. We accept that framing, and our analysis considers statutes and contextual administrative rules in effect in 1991. The relevant text of ORS 144.103 as it existed in 1991, is as follows:

> "Any person sentenced to a term of imprisonment for violating or attempting to violate ORS 163.375, 163.405, 163.408, 163.411, or 163.425 shall serve a term of post-prison supervision that shall continue until the term of the post-prison supervision, when added to the term of imprisonment served, equals the maximum statutory indeterminate sentence for the violation."

Petitioner presents two alternative positions to us on review. In response to the first question allowed on review, he contends that the phrase "term of imprisonment served," as used in ORS 144.103(1), means the total period of time a person is incarcerated on all counts, rather than the term of imprisonment for an individual count. As applied to petitioner's case, then, the post-prison supervision term would be determined by subtracting the cumulative 200 months he served on all three counts from the 240-month

maximum. He illustrates that calculation with the following visual diagram:



Petitioner's second argument is in the alternative to his first. If we reject his first contention, petitioner asserts that—in response to the second question presented—his PPS terms on Count 1 should be treated as having started while he was still in prison on Counts 3 and 5 (and similarly, the PPS term for Count 3 would have started while he was in prison on Count 5). He illustrates with the following visual diagram:



We turn first to the text of ORS 144.103. By its terms, the statute applies only to certain crimes, first-degree sodomy (ORS 163.405) being one of them. When the statute applies, it directs the board to make a specific calculation to determine the PPS term. The board is to take "the maximum statutory indeterminate sentence for the violation," subtract the "term of imprisonment served," and impose the result as the "term of post-prison supervision."

Petitioner argues that one would naturally read "term of imprisonment served" to mean the entire time that a person spends in prison, and not the time in prison for a

single count. We do not disagree that—in a vacuum—one might read the words that way. However, when examined within the sentences in which that term is embedded, as well as further context, the "term of imprisonment served" does not carry the meaning suggested by petitioner.[4] We think that the text and context show that the "term of imprisonment served" in ORS 144.103 means the time that a person spent in prison on a specific conviction; it is not an aggregated period of time spent in prison on all convictions.

To begin with, ORS 144.103 prescribes a mathematical formula. One end of the equation is fixed: the "maximum statutory indeterminate sentence for the violation." The word "violation" is in the singular. We acknowledge that the legislative choice to use the singular is far from dispositive. *See* ORS 174.127(1) (in statutes, "[t]he singular number may include the plural and the plural number, the singular"). But as used in ORS 144.103, as in other statutes, the words "maximum statutory indeterminate sentence" applies to individual violations. *See* ORS 144.103 (referring to "maximum statutory indeterminate sentence for *the* violation" (emphasis added)); *see also, e.g.*, ORS 161.605(1) (providing that "maximum term of an indeterminate sentence of imprisonment" for Class A felony is 20 years (240 months)). Petitioner does not identify any statute that would prescribe a maximum indeterminate sentence for anything other than a single offense. The phrase "maximum statutory indeterminate sentence for the violation" thus means the maximum sentence, prescribed by statute, for a particular criminal conviction.

The Oregon Sentencing Guidelines further support that conclusion. We have previously explained that the guidelines are context for ORS 144.103, as they were enacted as law by the legislature. *See Kragt I*, 368 Or at 581, 587-88; *State v. Langdon*, 330 Or 72, 74, 999 P2d 1127 (2000) ("Although the sentencing guidelines were created as administrative rules, the legislature approved them in

---

[4] Petitioner himself gives an example showing how context can support either meaning of "term of imprisonment." In a single sentence, ORS 144.783(1) uses those words in both senses at the same time: once to mean the individual term for a single conviction, and a second time to mean the total prison term for all convictions. *Id.* (when person is "sentenced to two or more consecutive terms of imprisonment, the duration of the term of imprisonment shall be the sum of the terms").

1989, giving them the authority of statutory law. Or Laws 1989, ch 790, § 87."). ORS 144.103 did little new in capping the combined PPS term and prison term at the length of the statutory maximum sentence. The guidelines had already required an essentially identical calculation for *any* PPS term. Looking to *former* OAR 253-05-002(4) (Sept 1, 1989), *renumbered as* OAR 213-005-0002(4) (Mar 8, 1996), we see:

> "The term of post-prison supervision, when added to the prison term, shall not exceed the statutory maximum sentence for the crime of conviction. When the total duration of any sentence (prison incarceration and post-prison supervision) exceeds the statutory maximum sentence, the sentencing judge shall reduce the duration of post-prison supervision to the extent necessary to conform the total sentence length to the statutory maximum."

The guidelines use slightly different terminology—"prison term" rather than "term of imprisonment served"—because it applies prospectively. But the calculation is the same.

Petitioner finds significance in the guidelines' requirement that a person serve only a single PPS term. *See former* OAR 253-12-040 (Sept 1, 1989), *renumbered as* OAR 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 (Mar 8, 1996) (providing that, when a person "has been sentenced to multiple terms of post-prison supervision, the terms of post-prison supervision shall be served as a single term"). Petitioner's argument appears to mistake the output—what happens when a person has multiple PPS terms—with the inputs—the duration of each individual PPS term. The formula in ORS 144.103 sets out how to calculate the length of the PPS term for certain crimes, whether or not there are any other crimes. *Former* OAR 253-12-040 states what should be done when there are multiple PPS terms, but it says nothing about what the individual PPS terms might be.[5] That is true whether the individual PPS terms are set by ORS 144.103, or instead set at one, two, or three years under *former* OAR 253-05-002(2).[6]

---

[5] The commentary to *former* OAR 253-12-040 confirms that the individual PPS terms do not "merge": instead, "[w]henever an offender is serving more than one term of post-prison supervision at a single time, the terms *shall be treated as* a single term of supervision." *Oregon Sentencing Guidelines Implementation Manual* 118 (1989) (emphasis added).

[6] In this case, consecutive sentences were imposed. That implicates another rule: *former* OAR 253-12-020(3)(a) (Sept 1, 1989), *renumbered as* OAR

The board's reading of ORS 144.103 results in predictable outcomes: In this case, one compares the Count 1 statutory maximum of 240 months to Count 1's 60-month prison time, arriving at a PPS term for Count 1 of 180 months. That would be true regardless of whether petitioner's sentences on Counts 3 and 5 were consecutive or concurrent—or, for that matter, whether petitioner had any other sentences at all.

In contrast, petitioner's proposed interpretation would produce unusual outcomes. The PPS term could change dramatically for reasons having nothing to do with Count 1. If all three sentences had been concurrent, then the PPS time would be 140 months (the 240-month maximum for Count 1, minus the 100 months served on Counts 3 and 5). If Count 3 had been consecutive to Count 1, with Count 5 concurrent, then the PPS term would be 80 months (the 240-month maximum on Count 1 minus 160 months total prison time on Counts 1 and 3). If (as actually happened) Count 3 was consecutive to Count 5, with Count 1 concurrent, then the PPS term would be 40 months (the 240-month maximum on Count 1 minus 200 months total prison time on Counts 3 and 5). And if all three sentences were consecutive, then the PPS term would be *negative* 20 months, transformed by the action of the statute to zero (the 240-month maximum for Count 1 minus 260 months of total prison time for Counts 1, 3, and 5). And even that list does not exhaust the possibilities (*e.g.*, other prison terms from unrelated earlier or later convictions).

Although the legislative history does not contain any explicit discussion of how the legislature expected ORS 144.103 to apply to multiple convictions, it is clear from that history that the legislature intended to expand, not reduce, post-prison supervision for certain crimes. What is now ORS 144.103 was first introduced as House Bill (HB) 2543 (1991). The legislature sought to extend the post-prison supervision periods for persons convicted of certain sex crimes. *See, e.g.*, Summary, HB 2543 (1991), Introduced, Feb

---

213-012-0020(4)(a) (Mar 8, 1996). That rule prescribes that the PPS term is to be "[t]he presumptive post-prison supervision term imposed for the primary offense." Petitioner does not dispute that his sentence on Count 1 was the primary offense.

1, 1991 ("Provides that post-prison supervision for a person convicted of committing or attempting to commit specified sexual offenses shall extend for length of time equal to maximum statutory indeterminate sentence for offense."); Staff Measure Summary, House Committee on Judiciary, Subcommittee on Criminal Law and Corrections, HB 2543, Feb 19, 1991 ("Extends the period of time which a person convicted of Rape I, Sodomy I, Sexual Penetration I or II, or Sex Abuse I will serve a term of post-prison supervision or probation. *** For post-prison supervision, the length of supervision will increase to the statutory indeterminate sentence."); Testimony, House Committee on Judiciary, Subcommittee on Criminal Law and Corrections, HB 2543, Feb 19, 1991, Ex B (testimony of Elyse Clawson, Assistant Director of Community Services Branch of Department of Corrections) (stating that department "supports the need to expand the supervision time of the more serious sex offenders in the community" because "[m]any sex offenders respond well to supervision," but expresses concern over expense additional supervision would require). The fiscal analysis of the bill assumed that, for covered offenses, the post-prison supervision term would on average extend the PPS term from three years to 10:

> "For the purposes of this estimate, the maximum period of incarceration for Class A felony sex crimes is estimated at 10 years and the period of post-prison supervision is estimated at 10 years, to reach the total maximum sentence of 20 years for a Class A felony."

Fiscal Analysis of Proposed Legislation, HB 2543, Mar 5, 1991, at 1.

Under petitioner's construction of the statute, as discussed above, an offender with multiple consecutive sentences could end up serving no PPS, whereas an offender with but a single conviction would serve PPS. Nothing in the legislative history indicates that the legislature intended such a result.

We therefore conclude that, as used in ORS 144.103, the "term of imprisonment served" refers to the term of imprisonment served for an individual conviction subject to

that statute. The Court of Appeals reached the correct result when it rejected petitioner's argument to the contrary.[7]

In response to the second question allowed on review, petitioner argues, in the alternative, that ORS 144.103 requires each individual PPS term to begin at the end of the associated prison term. Thus, petitioner maintains, the PPS term on Count 1 began to run after 60 months, even while he remained in prison on the remaining part of his 100-month sentence for Count 3 and the consecutive 100-month sentence for Count 5. Again, a visual summary:



Turning to that issue, our task remains the same—determining the meaning of ORS 144.103. And as with our first inquiry, other sentencing statutes and administrative rules provide context.

Again, neither the text nor context of ORS 144.103 support petitioner's argument. First, nothing in the statute itself explicitly states when post-prison supervision begins. *See* ORS 144.103. Second, the rules in effect at the time of petitioner's sentencing—as now—defined post-prison supervision as community-based, not incarcerative, supervision:

---

[7] Petitioner's brief attempts to raise an additional claim that that interpretation renders the sentence unconstitutionally disproportionate. The Court of Appeals declined to reach that question. *See Kragt II*, 325 Or App at 695 ("[P] etitioner exceeded the permissible scope of the supplemental brief that he was given leave to file, when he raised an entirely new constitutional challenge to the board's order on review"). Our order accepting review in this case limited review to other questions. *See* ORAP 9.20(2) (authorizing court to limit questions on review). We therefore decline to reach the constitutional issue.

"A term of community supervision shall be imposed as part of the sentence for any offender who is sentenced to prison as provided by these rules or as a departure. This term of community supervision shall be described as post-prison supervision."

*Former* OAR 253-05-002(1) (Sept 1, 1989), *renumbered as* OAR 213-005-0002(1) (Mar 8, 1996). And separately, *former* OAR 253-05-003 (Sept 1, 1989), *renumbered as* OAR 213-005-0003 (Mar 8, 1996), provides that, "[w]hen a term of post-prison supervision is imposed as part of a sentence, the offender shall serve the term of supervision *in the community*." (Emphasis added.) Time that a person spends incarcerated—that is, not in the community—is not time served on supervision "in the community." Accordingly, that time cannot rationally be considered time served on post-prison supervision.

Petitioner's argument that PPS can begin while a person remains incarcerated is further belied by the rules that govern how consecutive sentences for new crimes are structured. *Former* OAR 253-12-030(2) (Sept 1, 1989), *renumbered as modified at* OAR 213-012-0030(3) (Mar 8, 1996), provided, in pertinent part:

"(2)    When a sentence is imposed consecutively to a sentence imposed in a prior proceeding, the supervision term or terms of the new sentence shall be served concurrently with the prior sentence as follows:

"(a)    If the supervision term of the new sentence is a term of probationary supervision, the supervision shall begin at the date of sentencing.

"(b)    If the supervision term of the new sentence is a term of post-prison supervision, the supervision term shall begin *upon the completion of the incarceration term of the combined sentences*."

(Emphasis added.)[8]

Additionally, that post-prison supervision must occur in the community, and not in prison, is further reflected in the way that the department uses risk assessment evaluations to set the conditions of post-prison supervision. That

_____

[8] OAR 213-012-0030(3)(b) has since been amended to add that the supervision term may also begin "upon release pursuant to ORS 421.508." That amendment does not affect our conclusion here.

risk assessment system is designed to facilitate management of the inmate in the community. OAR 213-005-0014, which was formerly numbered as OAR 253-05-014 (Sept 1, 1989), requires:

> "(1)  The Department or its designees shall use a risk assessment classification system to classify offenders for supervision purposes.
>
> "(2)  The level of supervision shall be established by the Department or its designees based on the offender-risk classification. The level of supervision may be increased or decreased by the supervisory authority in response to the offender's conduct under supervision and *as is necessary to manage the offender in the community*."

(Emphasis added.)

The discussion of release in the sentencing statutes further reflects an understanding that post-prison supervision must be served in the community and therefore cannot be considered to start while an offender remains incarcerated. Specifically, ORS 144.096 requires that "[t]he Department of Corrections shall prepare a proposed release plan for an adult in custody and submit the proposed release plan to the State Board of Parole and Post-Prison Supervision prior to the release."[9] The statute mandates that, before release from incarceration, the release plan must specify "recommended conditions of post-prison supervision." ORS 144.096(3)(b).

Turning to the legislative history of ORS 144.103, petitioner points to nothing in that history—or in that of any sentencing statute, nor have we have found anything ourselves, indicating that the legislature has ever, in any context, envisioned post-prison supervision as occurring while a person remained incarcerated in a penal institution. Rather, the entire logical structure of the sentencing statutes and administrative rules would be upended by such a proposition. ORS 144.103 sets out the method to calculate the length of certain PPS terms. The rules determine when the PPS term begins, and those rules require a single term

---

[9]  ORS 144.096 has been amended on several occasions since its initial passage.  Because those amendments do not affect our analysis, we cite to the current version of the statute.

that cannot begin until after petitioner has been released to community supervision.

To be sure, petitioner is able to find language in the rules that, in isolation, could be viewed as offering support for his interpretation. Petitioner relies primarily on *former* OAR 253-05-002(3) (Sept 1, 1989), *renumbered as* OAR 213-005-0002(3) (Mar 8, 1996), for that support. That rule reads, in part, "The term of post-prison supervision shall begin upon completion of the offender's prison term." But that rule does not sit alone; it is part of a comprehensive framework of statutes and rules governing sentencing and post-prison supervision, several of which we have just discussed. We will not read it in isolation, separate from the larger framework, which provides considerable context cutting against petitioner's argument.

Indeed, beginning individual PPS terms while a person is still incarcerated on other counts is not fully consistent with the framework that we identified in *Kragt I*. There, we held that ORS 144.103 required the trial court to set separate PPS terms for each conviction. 368 Or at 596 ("Our consideration of the text, context, and legislative history leads us to conclude that a trial court must impose a PPS term for each violation of the statutes listed in ORS 144.103(1)."). The sentencing guidelines contemplated that a person may be sentenced to multiple PPS terms, and they direct the board to treat them as a single term. *Former* OAR 253-12-040(1) (Sept 1, 1989), *renumbered as* OAR 213-012-0040(1) (Mar 8, 1996) (providing that, when a person "has been sentenced to multiple terms of post-prison supervision, the terms of post-prison supervision shall be served as a single term"). Accepting petitioner's argument would require the board to run separate PPS terms, in violation of *former* OAR 253-12-040(1)'s directive that the terms "shall be served as a single term."

Ultimately, as we understand it, petitioner's two arguments discussed above express a fundamental concern with the gaps in the board's calculation of his sentences, as shown again here:



As petitioner argues, "the board's calculation on Count 1 resulted in a gap of 140 months between the end of petitioner's prison term and the start of his PPS term. That means he will spend 380 months serving a sentence for an offense with a statutory maximum indeterminate sentence of only 240 months." In our view, that argument fails to grapple with the nature of consecutive sentences.

In Oregon, generally, sentences are presumed to run concurrently to one another. ORS 137.123(1). A court has discretion to order sentences to run consecutive when the criminal activity does not arise from the "same continuous and uninterrupted course of conduct." ORS 137.123(5). Thus, a court has broad discretion to run sentences consecutively when differing counts reflect differing instances of unlawful conduct, or different victims. ORS 137.123(5)(b). And in fact, Article I, section 44 of the Oregon Constitution states that "[n]o law shall limit a court's authority to sentence a criminal defendant consecutively for crimes against different victims."

For convictions arising out of a continuous and uninterrupted course of conduct, a court has limited discretion to order sentences to run consecutively, when the court finds one of the following:

"(a)  That the criminal offense for which a consecutive sentence is contemplated was not merely an incidental violation of a separate statutory provision in the course of the commission of a more serious crime but rather was an indication of defendant's willingness to commit more than one criminal offense; or

"(b)   The criminal offense for which a consecutive sentence is contemplated caused or created a risk of causing greater or qualitatively different loss, injury or harm to the victim or caused or created a risk of causing loss, injury or harm to a different victim than was caused or threatened by the other offense or offenses committed during a continuous and uninterrupted course of conduct."

ORS 137.123(5).

In all of those instances, consecutive sentences reflect a recognition that, in some instances, a court may discretionarily determine that different counts of conviction represent different and distinct harms—harms that, in the court's discretion, may appropriately require separate punishments to effectuate "the stated purposes of the revised criminal code in ORS 161.025: '[t]o prescribe penalties which are proportionate to the seriousness of offenses,' and '[t]o safeguard offenders against excessive, disproportionate or arbitrary punishment.'" *State v. Garcia*, 288 Or 413, 430, 605 P2d 671 (1980) (brackets in *Garcia*).

When a court exercises discretion to craft consecutive sentences, a person will serve each sentence, in sequence, in part to represent those separate and distinct victims, or harms, brought about by the separate counts of conviction. In petitioner's case, therefore, the 140-month "gap" was not a continuing punishment for that count; it was not a period of time petitioner is serving his sentence *on Count 1*. Rather, upon completion of his 60-month incarcerative sentence on Count 1, his incarcerative sentence on that count was over, and he continued serving the remaining 40 months to be served on Count 3. Then, 40 months later, petitioner began serving his consecutive incarcerative sentence on Count 5, reflecting the court's discretionary determination (not challenged in this case) that the harm of Count 5 was deserving of discrete and separate incarcerative punishment separate from the other counts. That is the very nature, and purpose, of consecutive sentences.

Accordingly, even though petitioner spent 200 months in a penal institution, petitioner was incarcerated for only 60 months on Count 1, 100 months on Count 3, and 100 months on Count 5. As such, his 180-month term of

PPS, added to his incarcerative term of 60 months on Count 1, equals a total period of supervision of 240 months, not 380 months.

### III.   CONCLUSION

For the reasons set out, the phrase "term of imprisonment served," as used in ORS 144.103, means the term of imprisonment imposed on the individual count of conviction. Further, post-prison supervision begins to run when the offender is released into the community for community-based supervision.

The decision of the Court of Appeals and the final order of the Board of Parole and Post-Prison Supervision are affirmed.