260 May 8, 2024 No. 13

IN THE SUPREME COURT OF THE
STATE OF OREGON

TERRI LEE BROWN,
*Plaintiff,*

*v.*

TINA KOTEK,
Governor of the State of Oregon;
Nichole Brown,
Superintendent,
Coffee Creek Correctional Facility; and
Tasha Petersen,
Administrator of Oregon Department of Corrections
Offender Information Sentence Computation Unit,
*Defendants.*
(SC S071034)

En Banc

Original proceeding in habeas corpus.

Argued and submitted May 2, 2024.

Steven T. Wax, Oregon Justice Resource Center, Portland, argued the cause for plaintiff. Julia Yoshimoto, Oregon Justice Resource Center, Portland, filed the petition, the memorandum in support of the petition, and the reply for plaintiff. Also on those filings was Malori Maloney.

Kirsten Naito, Assistant Attorney General, Salem, argued the cause for defendants. Paul L. Smith, Deputy Solicitor General, Salem, filed the memorandum in opposition. Also on the memorandum were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

GARRETT, J.

It is hereby ordered that plaintiff immediately be discharged from her illegal imprisonment. Pursuant to ORAP 1.20(5) and notwithstanding ORAP 9.25 and ORAP 14.05 (3)(b), the State Court Administrator shall issue the appellate judgment immediately.

**GARRETT, J.**

Plaintiff has petitioned for a writ of habeas corpus, requesting that this court exercise its original jurisdiction and order her immediate release from prison. Or Const, Art VII (Amended), § 2 ("[T]he supreme court may, in its own discretion, take original jurisdiction in *** habeas corpus proceedings.").[1] Plaintiff is incarcerated as the result of an order of Governor Tina Kotek that revoked an earlier conditional commutation of one of plaintiff's sentences.[2] Plaintiff had received that earlier commutation in December 2020 from then-Governor Kate Brown and finished serving all of her sentences in February 2023. Governor Kotek's order of revocation issued in December 2023. For the reasons explained in this opinion, we conclude that, because plaintiff had finished serving all of her sentences when the Governor revoked the conditional commutation, the Governor lacked authority, under the terms of the commutation, to issue the revocation. We also reject the state's argument that plaintiff waived her right to challenge her present imprisonment.

Plaintiff's imprisonment is unlawful. Accordingly, we order that she immediately be discharged from custody.

FACTUAL AND PROCEDURAL BACKGROUND

The relevant facts are procedural and uncontested.[3] Plaintiff pleaded guilty to two counts of mail theft or receipt of stolen mail. ORS 164.162. On Count 1, she was sentenced to 30 months of incarceration and 24 months of post-prison supervision (PPS). On Count 2, she was sentenced to 30 months of incarceration, consecutive to Count 1, and no

---

[1] *See also* ORS 34.310 (providing that every person who is "imprisoned or otherwise restrained of liberty," with exceptions, "may prosecute a writ of habeas corpus to inquire into the cause of such imprisonment or restraint, and if illegal, to be delivered therefrom").

[2] Defendants are Governor Kotek, the Superintendent of Coffee Creek Correctional Facility (where plaintiff is currently in custody), and the Administrator of the Oregon Department of Corrections Offender Information Sentence Computation Unit. Throughout this opinion, individual defendants are referred to by name, and defendants collectively are referred to as "the state."

[3] Throughout this opinion, we refer to various dates and time periods regarding plaintiff's convictions and sentences. Those dates and time periods were likely determined based on a variety of considerations. In all events, because those dates and periods are undisputed, we need not—and do not—explain how they were determined.

PPS. As of December 2020, plaintiff's term of incarceration was set to be completed in August 2021. That is, she had approximately eight months of incarceration remaining before being released to serve 24 months of PPS.

In December 2020, Governor Brown issued commutations of sentences in connection with the COVID-19 pandemic. In plaintiff's case, Governor Brown ordered a "Conditional and Revocable Commutation of Sentence." The commutation order stated that, as to Count 2, plaintiff was "scheduled to complete her term of incarceration on August 22, 2021." The Governor then commuted the remaining term of incarceration "from incarceration to post-prison supervision." The commutation was subject to a variety of conditions, including that (1) "[f]rom the effective date of [the] order through the end of her [PPS] calculated to August 22, 2021, [plaintiff] shall not violate any state or federal law"; (2) the commutation order "[did] not relieve [plaintiff] of [PPS]"; (3) plaintiff shall "agree to, and abide by, the terms specified in the Agreement Accepting Conditional and Revocable Commutation" (hereinafter, the acceptance agreement); and (4) if the Governor, in her judgment, should determine that plaintiff "has violated any of the conditions of this conditional and revocable commutation," or that plaintiff's "continued release in the community no longer serves the interests of the State of Oregon," the "commutation may be revoked, at which time [plaintiff] shall be returned to prison to serve out her sentence that was remaining at the time this commutation was granted according to the terms of the Judgment of Conviction."

The acceptance agreement stated that "the Governor [was] willing to grant a commutation to [plaintiff] only as provided in this agreement[.]" Among other things, the agreement provided that (1) "[f]rom the effective date of the [commutation order] through August 22, 2021, [plaintiff] shall not violate any state or federal law"; and (2) plaintiff "shall abide by the terms and conditions of any post-prison supervision that is imposed in connection with the conditional and revocable commutation and her Judgment of Conviction." The agreement included a waiver provision, stating that plaintiff waived any legal challenges to

future revocation of the commutation and to being returned to prison, including through a petition for a writ of habeas corpus:

> "If the Governor of the State of Oregon should determine in his or her sole judgment that [plaintiff] has violated any of the conditions of this conditional and revocable commutation, the Governor may revoke such commutation and require that [plaintiff] return to prison to serve out her sentence that was remaining at the time her commutation was granted according to the terms of the Judgment of Conviction. *[Plaintiff] hereby waives any potential objection or challenge to having the commutation revoked and being returned to prison under such a determination, including an application for a writ of habeas corpus.*"

(Emphasis added.) Plaintiff signed the acceptance agreement, which included an acknowledgement that she had "carefully reviewed" both the agreement and the commutation order and that she "hereby agree[d] to its terms."

The Governor's conditional commutation became effective on December 23, 2020. Plaintiff was released from prison and placed under the authority of the Board of Parole and Post-Prison Supervision (BOPPS) to serve her PPS.

In May 2021—approximately four months after her release from prison—plaintiff pleaded no contest to violating a general condition of her PPS (*i.e.*, that she "[o]bey all laws, municipal, county, state, and federal"). A hearings officer found her in violation of her PPS, and a 30-day jail sanction was imposed. The parties do not dispute that plaintiff's conduct constituted a violation of the conditions of her commutation. Other than the imposition of the sanction, we are unaware of any other actions being taken at that point.

Almost two years later, in February 2023, BOPPS issued a "Certificate of Supervision Expiration," stating that plaintiff had "completed the period of post-prison supervision imposed, and *** is expired from supervision." In other words, plaintiff had fulfilled her PPS obligations and was no longer subject to any sentence. The state does not dispute that point.

In February 2024, approximately one year after BOPPS issued its certificate of supervision expiration,

plaintiff was arrested and sent to Coffee Creek Correctional Facility. According to plaintiff, several days after her arrest, she learned that her commutation had been revoked. The record reflects that Governor Kotek had issued an order in December 2023, stating that she had "determined in [her] sole judgment that [plaintiff had] violated conditions of [the] Conditional and Revocable Commutation of Sentence." A warrant was issued for plaintiff's arrest, leading to her present imprisonment.

Thereafter, plaintiff filed a petition for a writ of habeas corpus in this court, contending that she is unlawfully incarcerated. Her petition was accompanied by a supporting memorandum in which she argues that Governor Kotek's revocation of her earlier conditional commutation violates a variety of state and federal constitutional principles, including that the Governor lacks authority to revoke a commutation after the expiration of a sentence. In response to our order requiring the state to show cause why a writ of habeas corpus should not issue, the state filed memoranda contending that (1) the Governor had authority to revoke plaintiff's commutation after her sentence had expired; (2) plaintiff, in accepting Governor Brown's conditional commutation, had waived her right to seek habeas relief or otherwise challenge the revocation; and (3) plaintiff's constitutional challenges are meritless. Plaintiff counters that the purported waiver in the acceptance agreement that she signed is invalid or otherwise unenforceable.

After considering those filings, the court allowed plaintiff's petition and issued a writ of habeas corpus, and then heard oral argument on May 2. Having now considered the parties' filings and their oral arguments, we conclude that, when the Governor revoked plaintiff's conditional commutation, she lacked the authority to do so under the terms of the commutation.

## ANALYSIS

The Governor has the constitutional authority to grant clemency, including commutations. Specifically, Article V, section 14, of the Oregon Constitution provides, in part:

"[The Governor] shall have power to grant reprieves, commutations, and pardons, after conviction, for all offences [*sic*] except treason, subject to such regulations as may be provided by law. Upon conviction for treason [the Governor] shall have power to suspend the execution of the sentence until the case shall be reported to the Legislative Assembly, at its next meeting, when the Legislative Assembly shall either grant a pardon, commute the sentence, direct the execution of the sentence, or grant a farther [*sic*] reprieve."

The Governor is the "sole repository" of this constitutional authority. *Eacret et ux v. Holmes*, 215 Or 121, 126, 333 P2d 741 (1958). In exercising her authority, however, "the Governor is responsible for determining the constitutionality of [her] actions in the first instance, and, to the extent that this court may review those actions, the court does so with that consideration in mind." *Haugen v. Kitzhaber*, 353 Or 715, 720, 306 P3d 592 (2013), *cert den*, 571 US 1167 (2014) (citing *Lipscomb v. State Bd. of Higher Ed.*, 305 Or 472, 478-79, 753 P2d 939 (1988)); *see Lipscomb*, 305 Or at 478-79 ("Governors, legislators, and other public officials are responsible in the first instance for determining their constitutional duties[.]"). However, as we explained in *Haugen*, that principle "does not exempt the Governor's actions from judicial review." 353 Or at 720. In so explaining, we relied on *Lipscomb*, in which the court had declined to adopt an argument that the court should defer to a Governor's understanding of her constitutional powers if arguably correct. *Id.* Thus, although this court does not have a role in reviewing a governor's exercise of discretion either to grant or to revoke a conditional commutation, we can review whether the revocation of plaintiff's commutation exceeded the Governor's authority under these circumstances—when plaintiff was no longer subject to any sentence at all. For reasons that we will explain, even assuming (without deciding) that the state and federal constitutions permit a Governor to revoke a commutation after a commutee's sentence has expired, we conclude that the terms of the conditional commutation in this case—which represents an agreement between the Governor and plaintiff—preclude that result.

The Governor's plenary power includes the power to grant unconditional forms of clemency that require no

assent by the commutee. *Haugen*, 353 Or at 739, 743 (concluding that an unconditional reprieve was "valid and effective, regardless of [the recipient's] acceptance of that reprieve"). Here, however, Governor Brown exercised her plenary power through the issuance of a conditional commutation order. In exchange for plaintiff having her remaining term of incarceration commuted to post-prison supervision, the Governor required plaintiff to agree to be bound by the acceptance agreement. In other words, the Governor structured the exercise of her clemency power as something akin to a contractual arrangement that required plaintiff's acceptance.[4]

    As pertinent here, the acceptance agreement required that plaintiff "abide by the terms and conditions of any post-prison supervision that is imposed in connection with the conditional and revocable commutation and her Judgment of Conviction." The text of the agreement thus reflects that the Governor chose to incorporate the statutory and regulatory PPS framework. The state acknowledges as much in this court, stating that, when plaintiff was released, "[s]he was placed on community supervision under the authority of [BOPPS]." *See* OAR 213-005-0003 ("When a term of post-prison supervision is imposed as part of a sentence, the offender shall serve the term of supervision in the community under the supervision of the Department of Corrections or a corrections agency designated by the Department."). And the record reflects that, when plaintiff was alleged to have violated the conditions of her PPS during the term of her supervision, a hearings process was quickly initiated, plaintiff pleaded no contest and was found in violation by a hearings officer, and she received a 30-day jail sanction. *See* OAR ch 255, div 75 (describing procedures for addressing alleged violations of PPS).

    The acceptance agreement also included a provision, similar to the one in Governor Brown's conditional commutation, which provided that the Governor "may" revoke the commutation if the Governor determined, in her

_____

[4] Given the circumstances of this case, where Governor Brown chose to require plaintiff's acceptance of the conditions in the commutation, we need not—and do not—decide whether the Governor's plenary power includes the authority to impose conditions without a commutee's consent.

discretion, that plaintiff had violated one of its conditions, which would lead to plaintiff being required to "return to prison to serve out her sentence that was remaining at the time her commutation was granted according to the terms of the Judgment of Conviction." Before this court, the state takes the broad and categorical position that, even though plaintiff's sentence had expired before her commutation was revoked, the revocation provision allows any Governor—at any time during plaintiff's natural life—to revoke the commutation and return her to prison upon a determination that she violated the terms of the commutation while she had been under supervision. As the state acknowledged at oral argument, under its interpretation, revocation could occur 50 years after plaintiff's sentence had expired, resulting in her arrest and imprisonment at that time.

However, the state's argument is inconsistent with the Governor's express incorporation of PPS—which is circumscribed by a statutory and regulatory framework—into the terms of the commutation order and plaintiff's acceptance agreement. PPS is a "*term* of community supervision." OAR 213-005-0002(1) (emphasis added). That *term* is determinate. *See* ORS 144.103 (providing for duration of PPS); OAR 213-005-0002(2)(a) (same). Offenders[5] are required to "serve *the term* of supervision." OAR 213-005-0003 (emphasis added). If an offender is alleged to have violated a condition of PPS, then, *during* the term of supervision, the offender may be arrested and a hearing is initiated to determine if the offender violated the condition. *See* ORS 144.350(1)(a)(A) (providing that a supervisory authority "may order the arrest and detention of any person *then under the supervision, custody or control*" of the supervisory authority if there are "reasonable grounds to believe" that the person has "[v]iolated the conditions of * * * post-prison supervision" (emphasis added)). The initiation of a hearing means that a "person *under supervision* is presented a Notice of Rights." OAR 255-075-0001(3) (emphasis added); *see also* OAR 255-075-0005(3) (providing that, generally,

---

[5] *See* OAR 255-005-0005(39) (defining "offender" as "[a]ny person under the supervision of the Department of Corrections or a local supervisory authority who is not presently in the custody of a correctional facility, including persons on * * * post-prison supervision").

"the Sanction Authority shall impose administrative sanctions or shall initiate a hearing within fifteen (15) days of arrest or detention for the violation of parole or post-prison supervision conditions"). Once initiated, jurisdiction over the offender is retained until the proceedings are resolved. *See* OAR 255-094-0020(1) ("During the pendency of violation proceedings, \*\*\* the Releasing Authority retains jurisdiction over the offender until the proceedings are resolved."). If an offender is found to have violated the conditions of PPS after the hearing, or if the offender waives the right to a hearing, administrative sanctions may be imposed or PPS may be revoked. *See* OAR 255-075-0067 (describing authority to impose administrative sanctions or revoke supervision). Ultimately, a term of PPS *ends* and the sentence *expires*. *See* OAR 255-094-0020(3) ("After expiration of the sentence of an offender on \*\*\* post-prison supervision, the Releasing Authority shall send written notice of the expiration to the offender and the supervisory authority."); *see also* ORS 144.085(6) ("The board shall send written notification to the supervised offender of the expiration of the sentence.").

        Thus, the PPS framework imposes a temporal limit on the authority to sanction or revoke an offender's post-prison supervision for a violation of a condition: As a general proposition, violation proceedings must be initiated while the offender is under supervision (*i.e.*, before the offender's sentence has expired) and not after the term of supervision has ended and the offender is no longer subject to any sentence. *See* ORS 144.350(1)(a)(A) (providing that, if there are "reasonable grounds to believe" that the person has "[v]iolated the conditions of \*\*\* post-prison supervision," a supervisory authority "may order the arrest and detention of any person *then under the supervision, custody or control*" of the supervisory authority (emphasis added)); OAR 255-075-0001(3) (providing that a hearing is initiated when a "person *under supervision* is presented a Notice of Rights" (emphasis added)).

        By specifying that plaintiff was obligated to serve PPS, which is governed by a statutory and regulatory scheme, her conditional commutation—together with the acceptance

agreement to which she was bound—incorporated the general principle that the authority to sanction an offender for a PPS violation, or to revoke the offender's PPS altogether, is time-limited and must be initiated before the offender's PPS term ends and while the offender remains subject to a sentence. In this case, although the commutation and the agreement clearly stated that the Governor, in her sole discretion, could revoke the commutation for a violation of its conditions, there is no indication that the authority to revoke would survive the expiration of plaintiff's sentence. Nor is there any indication that, contrary to the ordinary application of the statutes and rules governing PPS, plaintiff would face the prospect of revocation and future imprisonment for the remainder of her life. Thus, by requiring plaintiff to serve PPS, and without clearly expressing an intent to depart from the temporal limitations that otherwise apply to PPS, the Governor limited her own ability, and the ability of any future holder of that office, to revoke the commutation to the period of time before plaintiff's PPS had ended and her sentence had expired.

Here, it is undisputed that, in February 2023, BOPPS issued its certificate stating that plaintiff had "completed the period of post-prison supervision imposed" and that she was "expired from supervision." At that point, plaintiff was no longer subject to any sentence. Accordingly, when the Governor revoked plaintiff's commutation in December 2023, she lacked the authority to do so under the terms of the December 2020 order of conditional commutation.[6]

We emphasize that the foregoing conclusion is a function of the way in which we understand Governor Brown to have structured plaintiff's conditional commutation. The parties' dispute before this court has focused on whether the state and federal constitutions permit the Governor to revoke a commutation following the expiration of a sentence. That is a difficult question of first impression in Oregon, and one on which other state courts have reached competing

---

[6] Because it is undisputed in this case that plaintiff was not subject to any sentence when the Governor revoked her conditional commutation, we need not—and do not—decide the precise point at which the Governor's authority to revoke plaintiff's conditional commutation of sentence ended.

conclusions.[7] But we need not resolve that question today, because, even assuming that such authority exists, we conclude that the December 2020 commutation order and the acceptance agreement are self-limiting. By specifying that plaintiff was obligated to serve PPS, without expressly reserving the right of the Governor to revoke the commutation even after plaintiff's sentence had expired, the commutation and acceptance agreement preclude that authority.

That conclusion does not fully resolve this matter. The state alternatively contends that plaintiff waived her right to seek habeas relief and to challenge both Governor Kotek's revocation and her current imprisonment.

It is true that the acceptance agreement includes a broadly worded waiver of plaintiff's rights. Plaintiff contests the validity of that waiver, asserting, among other things, that the process resulting in her acceptance of the commutation was "rushed" and that the implications of the waiver were never explained to her; thus, she did not knowingly and voluntarily agree to waive her right to challenge the Governor's revocation, or her current imprisonment, or her right to seek habeas corpus under the circumstances.

In this case, however, we conclude that it is unnecessary to address those points. That is because, even if we assume that plaintiff effected a valid waiver of some kind, we decline to read the text of this waiver as broadly as the state's argument requires. The waiver provision can be interpreted in a manner consistent with the ordinary understanding of the PPS framework described above—*i.e.*, that plaintiff was waiving the right to challenge a revocation that was initiated before the expiration of her sentence. By taking the position that plaintiff forfeited the ability to challenge a revocation that was ordered even *after* the completion of her sentence, the state would have us conclude that plaintiff, in

---

[7] *Compare Rowell v. Dutton*, 688 SW2d 474, 477 (Tenn Crim App 1985) ("Thus we hold that the Governor's authority to revoke exists only so long as the commutee's sentence has not expired. Any other result would mean that the Governor and his successors in office would retain the power to revoke a commutation throughout the balance of a commutee's life, regardless of the offense, and could lead to absurd results."), *with Beal v. Mayo*, 70 So 2d 367, 368 (Fla 1954) ("[R]ecommitment for breach of condition is proper notwithstanding the fact that the period of original sentence has expired when the conditional pardon is revoked.").

exchange for being released from prison eight months early, chose not only to accept the risk of future imprisonment for a violation of the conditions of the commutation—without process or the right of judicial review—but to run that risk for the remainder of her life. Even assuming that a choice of such gravity by a commutee could be enforceable—a question we do not decide—we would require it to be expressed with the utmost clarity. The acceptance agreement in this case does not meet that standard. *See State v. Meyrick*, 313 Or 125, 131, 831 P2d 666 (1992) (observing that courts "are reluctant to find that fundamental constitutional rights have been waived").

Accordingly, under the circumstances of this case, we conclude that Governor Kotek lacked authority to revoke plaintiff's conditional commutation and that, as a result, plaintiff's present imprisonment is unlawful. We order defendants to discharge plaintiff from custody immediately. *See* ORS 34.700(1) ("If it appears that the party detained is imprisoned or restrained illegally, judgment shall be given that the party be discharged forthwith[.]"). We further waive otherwise applicable appellate rules relating to reconsideration and the issuance of the appellate judgment, and we direct the State Court Administrator to issue the appellate judgment immediately. *See* ORAP 1.20(5) (permitting the court, for good cause and on its own motion, to waive any rule of appellate procedure); ORAP 9.25 (providing for reconsideration); ORAP 14.05(3)(b) (providing for the timing of the issuance of the appellate judgment).[8]

It is hereby ordered that plaintiff immediately be discharged from her illegal imprisonment. Pursuant to ORAP 1.20(5) and notwithstanding ORAP 9.25 and ORAP 14.05(3)(b), the State Court Administrator shall issue the appellate judgment immediately.

---

[8] ORS 34.700(2) provides that a court "shall include in the judgment an order that the defendant pay the attorney fees incurred by the petition, not to exceed $100," if "[t]he court enters a judgment requiring that the plaintiff be discharged" and "[t]he court finds that the allegations or defenses in the return were frivolous." Under the circumstances, we do not find that the state's position was frivolous. For that reason, plaintiff is not entitled to attorney fees under the statute.