784 February 4, 2026 No. 60

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

JAIME ESTRADA GUZMAN,
*Petitioner,*

*v.*

BOARD OF PAROLE AND POST-PRISON
SUPERVISION,
*Respondent.*

Board of Parole and Post-Prison Supervision
A186371

Argued and submitted December 5, 2025.

Kenneth A. Kreuscher argued the cause for petitioner. On the opening brief were Malori Maloney and Oregon Justice Resource Center. Also on the reply brief were Kassidy N. Hetland and Oregon Justice Resource Center.

Philip Thoennes, Assistant Attorney General, argued the cause for respondent. Also on the brief were Dan Rayfield, Attorney General, and Benjamin Gutman, Interim Deputy Attorney General.

Before Tookey, Presiding Judge, Kamins, Judge, and Jacquot, Judge.

TOOKEY, P. J.

Reversed and remanded.

**TOOKEY, P. J.**

Petitioner seeks judicial review of a final order of the Board of Parole and Post-Prison Supervision (the board). In his sole assignment of error, petitioner contends that the board "erred in setting a post-prison supervision term of 36 months when petitioner had already served nine months of post-prison supervision." The board responds that it did not err, because "the 275 operative days of supervision that petitioner spent out of prison" did not "qualify as post-prison supervision."

Because the board ought to have, but did not, credit petitioner for the 275 days that petitioner spent on post-prison supervision when setting his term of post-prison supervision, we reverse and remand.

BACKGROUND

In May 2020, after pleading no contest to certain conduct, petitioner was sentenced to 25 months' incarceration in the custody of the Oregon Department of Corrections (ODOC) and three years of post-prison supervision; thus, the total duration of petitioner's sentence was 61 months.

A little under a year after petitioner's conviction—in February 2021—Governor Kate Brown, in consideration of the "threat presented by COVID-19," signed a "conditional and revocable commutation of sentence" for petitioner and other incarcerated individuals who met certain criteria (Releasees). The commutation order provided that the Governor commuted "the remaining term of incarceration of each Releasee, from incarceration to post-prison supervision, effective as of the 11th day of February 2021, immediately upon execution of this order."

The order further provided that (1) it did not "relieve any of the Releasees of post-prison supervision," (2) "each Releasee shall not violate any state or federal law during the period of time from the effective date of this order through the end of that particular Releasee's post-prison supervision (calculated by DOC and included in Exhibit A)"; and (3) if a Releasee's commutation is revoked—either because the "Releasee has violated any of the conditions of this

conditional and revocable commutation, or that a Releasee's continued release in the community no longer serves the interests of the State of Oregon"—"the Releasee shall be returned to prison to serve out his or her sentence that was remaining at the time [the] commutation was granted according to the Releasee's Judgment of Conviction."

Attached to the commutation order was an exhibit—Exhibit A—containing a list of certain adults in ODOC custody, including petitioner. On the exhibit, next to petitioner's name, was a note that petitioner was due to serve 36 months of post-prison supervision.

In connection with the commutation order, the board issued an "Order of Supervision Conditions" that imposed various supervision conditions on petitioner, stated that petitioner is "hereby released," and stated that "parole or post-prison supervision shall begin on release from physical custody."

Subsequently, petitioner was supervised in the community, and proceedings were initiated concerning petitioner after he was alleged to have violated the terms of his supervision. A hearing summary from March 2024 reflects that petitioner had failed to "report as directed" and failed to "obey all laws." It also reflects that petitioner was "currently serving 36 months of Post-Prison supervision," that he was informed that the "Board could decide to Revoke his [post-prison supervision] for up to 180 Days," and recommended a "180-day Revocation due to [petitioner's] new law violations." Ultimately, the board informed petitioner that his "post-prison supervision has been revoked for 180 days," that "post-prison supervision has stopped during this revocation sanction," that the board is "adjusting the post-prison supervision expiration date for the amount of time supervision has been stopped," and that petitioner "is not being ordered to serve more post-prison supervision than that ordered by the sentencing court."

On April 30, 2024, Governor Tina Kotek signed an order revoking petitioner's "conditional and revocable commutation of sentence." The order revoking the commutation provides that "as a condition of [the] commutation,

[petitioner] agreed to abide by the terms and conditions of his post-prison supervision and not to violate any state or federal law" and that the Governor determined in her "sole judgment that [petitioner] violated conditions of that Conditional and Revocable Commutation of Sentence."

After the commutation was revoked, and due to petitioner's commutation being revoked, the board reduced petitioner's "sanction" for violation of post-prison supervision conditions from 180 days to 72 days, and petitioner served the prison term that remained on his sentence at the time his commutation was granted.

On August 28, 2024, the board issued an "Order of Supervision Conditions" stating that, upon release from ODOC, petitioner would be placed on post-prison supervision for a period of 36 months. That is, in the August 2024 order, in calculating the duration of petitioner's post-prison supervision, petitioner was not given any credit for the time that he had spent on supervision after he received the commutation but before the commutation was revoked.

Petitioner sought administrative review of the board's August 2024 order contending, among other points, that the board did not have statutory authority to extend his post-prison supervision term beyond the term imposed by the trial court and that it had done so by imposing 36 months of post-prison supervision. Petitioner requested that the board order a term of post-prison supervision that accounted for the time petitioner served on supervision before his commutation was revoked, which petitioner calculated as 275 days (approximately nine months).[1] As petitioner saw it, in essence, absent correction by the board, his total sentence was 70 months—25 months in ODOC custody, plus approximately 45 months on post-prison supervision. And he contended that that was unlawful, because he was only sentenced to a sentence of 61 months by the trial

---

[1] Much of the time petitioner was in the community and out of custody during the commutation—899 of the days—was "inoperative" time. *See* OAR 291-100-0008(17) (inoperative time is "[t]ime spent on abscond, escape, or unauthorized departure from custody, any form of temporary or transitional leave, or parole or post-prison supervision, which does not count toward service of the sentence(s)"). Petitioner does not contend that in determining the duration of his post-prison supervision the board was required to give him credit for that "inoperative" time.

court—25 months in ODOC custody, plus 36 months of post-prison supervision.

The board disagreed with petitioner. In ARR 1, the board explained, in "preparation for your early release on the former governor's commutation, the Board issued an Order of Supervision Conditions, and on February 11, 2021, you were placed on [post-prison supervision]." The board further explained, however, that the

> "former Governor *** ordered that upon revocation of the commutation, you would be returned to prison to serve out (your) sentence that was remaining at the time this commutation was granted according to the terms of the Judgment of Conviction. Thus, when Governor Kotek revoked your commutation, you were required to be returned to [O]DOC to finish the entire sentence that remained at the time of the original conditional commutation. Pursuant to OAR 213-005-0002(3)[2], your terms of [post-prison supervision] could not begin until completion of your prison term and OAR 213-005-0003[3] required that your terms of [post-prison supervision] had to be served in the community. Accordingly, you are not afforded any [post-prison supervision] credit for the time spent in the community after being granted the conditional commutation, because upon revocation of the commutation, your entire unserved sentence was reinstated. As a result of the revocation, any time spent in the community was not spent serving the post-prison supervision portion of your sentence. Instead, you merely spent time in the community awaiting service of the remainder of your entire sentence. Any time you spent in the community under the terms of the conditional commutation, on the Board's Order of Supervision Conditions, prior to the revocation of your commutation, simply cannot be credited towards any subsequent [post-prison supervision] calculation."

(Internal quotation marks omitted.)

---

[2] OAR 213-005-0002(3) provides, in part:

"The term of post-prison supervision shall begin upon completion of the offender's prison term or such term as directed by the supervisory authority."

[3] OAR 213-005-0003 provides:

"When a term of post-prison supervision is imposed as part of a sentence, the offender shall serve the term of supervision in the community under the supervision of the Department of Corrections or a corrections agency designated by the Department."

Thus, we understand the board's determination that petitioner was not due credit for the time he served in the community under supervision to rest on two related premises: First, that under the terms of the Governor's commutation, upon revocation of the commutation, petitioner was, in effect, returned to square one with regard to the time left on both the incarcerative (*i.e.*, custodial) portion of his sentence and the non-incarcerative (*i.e.*, post-prison supervision) portion of his sentence. Second, as a result of the revocation, petitioner's "time spent in the community" after release from prison—during which he was supervised—was not actually time spent on post-prison supervision, but instead "merely" time "in the community awaiting service of the remainder of [petitioner's] entire sentence."

Petitioner seeks judicial review of the board's order.

## ANALYSIS

We review the board's order "for legal error, substantial evidence, and substantial reason." *Person v. Board of Parole*, 327 Or App 332, 339, 535 P3d 779 (2023).

On judicial review, as noted, petitioner contends that the board erred in calculating the duration of post-prison supervision that he would be required to serve upon release from incarceration. In advancing that argument, petitioner argues both that "the board lacked authority to extend petitioner's term of post-prison supervision" and that "petitioner's commutation did not give the board authority to extend his term of post-prison supervision," because, among other reasons, "principles of contract interpretation do not support the board's reading of the commutation." Ultimately, we understand petitioner to contend that the board erred as a matter of law.

The board, for its part, argues that "the board correctly released petitioner to 36 months of post-prison supervision." As the board sees it, under the commutation order, "when petitioner's commutation was revoked, he was returned to prison to finish serving the incarcerative portion of his sentence," and "petitioner could not have served any term of post-prison supervision *before* he completed the incarcerative portion of his sentence, because post-prison

supervision begins only when the offender completes their term of imprisonment and is released to the community." (Emphasis in original.)

Having considered the parties arguments and the board's order, we conclude that the board erred.

ORS 137.010 imposes a duty "on the *court* having jurisdiction to pass sentence to do so in accordance with rules promulgated by the Oregon Criminal Justice Commission unless otherwise specifically provided by law." *Gaynor v. Board of Parole*, 165 Or App 609, 614-15, 996 P2d 1020 (2000), *abrogated on other grounds by State v. Hart*, 188 Or App 650, 72 P3d 671, *rev den*, 336 Or 126 (2003) (emphasis in *Gaynor*). And pursuant to ORS 137.010(10), "[a] judgment of conviction that includes a term of imprisonment for a felony committed on or after November 1, 1989, shall state the length of incarceration and the length of post-prison supervision."

Post-prison supervision is governed by both a statutory and a regulatory framework. In this case, given the terms of the Governor's "conditional and revocable commutation of sentence"—including repeated references to post-prison supervision—we understand the Governor to have chosen to incorporate the statutory and regulatory post-prison supervision framework into her commutation of petitioner's sentence. *See Brown v. Kotek*, 372 Or 260, 268, 548 P3d 1286 (2024) (noting that the Governor incorporated the "statutory and regulatory post-prison supervision framework" into the "acceptance agreement" related to a similar conditional commutation order during the COVID-19 pandemic).

Post-prison supervision itself is, at bottom, a "*term* of community supervision.'" *Id.* (quoting OAR 213-005-0002(1); emphasis in *Brown*). "That *term* is determinate," *id.* (emphasis in *Brown*), meaning "the sentence imposed by the sentencing court *** represents the actual amount of time that an offender" will serve, subject to "certain reductions allowed by law," *State v. Ambill*, 282 Or App 821, 824, 385 P3d 1110 (2016), *rev den,* 361 Or 524 (2017) (so noting with respect to incarceration). The board has no power to "extend

a post-prison supervision term beyond that imposed by the trial court." *Gaynor*, 165 Or App at 613-14.

Ultimately, a central question in this case is whether the board was correct in determining that the time petitioner spent in the community under supervision was not "post-prison supervision." That is important for petitioner because, if it was post-prison supervision, and the board has now ordered petitioner to serve an additional 36 months of post-prison supervision, he will be required to serve approximately 45 months of post-prison supervision total, which is in excess of that to which he was sentenced. At least as a general matter, that would be an unlawful order. *See Gaynor*, 165 Or App at 614 ("[T]he Board did not possess the authority to lengthen petitioner's term of post-prison supervision beyond that ordered by the court.").

We conclude that, contrary to the board's determination, during the Governor's commutation of his sentence, petitioner was, in fact, serving post-prison supervision while he was being supervised in the community. In reaching that conclusion, we observe that the board repeatedly described petitioner's supervision in the community as "post-prison supervision"; the board sanctioned petitioner after it determined that petitioner had violated the conditions of that "post-prison supervision"; the board revoked petitioner's "post-prison supervision" for 180 days during which petitioner's "post-prison supervision *** stopped," and it then "adjust[ed] the post-prison supervision expiration date for the amount of time supervision has been stopped"; and, after the Governor revoked the commutation of petitioner's sentence, the board reduced petitioner's sanction for violating the conditions of his "post-prison supervision" from 180 days to 72 days.

Notwithstanding those facts, as noted, on appeal, the board takes the position that petitioner's time under supervision in the community after his release from prison was not time spent on post-prison supervision. As we understand the board's position, in its view, the Governor's revocation of the commutation of petitioner's sentence *retroactively* altered the nature of the supervision that petitioner had already been subject to in the community, which had

the effect of causing petitioner's post-prison supervision to become something else entirely: time that petitioner "merely spent" in "the community awaiting service of the remainder of [his] entire sentence."

Whether the board's position is best conceived of as advocating for Schrödinger's post-prison supervision[4] or Kafka's, we are aware of no authority—and the board does not point to any authority—allowing an event subsequent to petitioner's post-prison supervision (*i.e.*, revocation of petitioner's commutation) to alter the nature of the supervision that petitioner had already experienced while he was in the community; that is, we are aware of no authority allowing the board to recharacterize the time petitioner served on post-prison supervision into time not spent serving post-prison supervision.[5]

Nor does the result reached by the board follow from the Governor's commutation order. As noted, in setting the duration of petitioner's post-prison supervision following his release in 2024, the board pointed to a portion of the Governor's commutation order providing that if the Releasees' commutation is revoked because "Releasee has violated any of the conditions of this conditional and

---

[4] In *State v. Kamph*, 297 Or App 687, 442 P3d 1129 (2019), this court recognized that, in Oregon, "a passenger in a vehicle that is stopped by police is Schrödinger's passenger—he exists in two potential states, both seized and not seized, and only one of those potential states becomes reality depending on the lens through which we observe him." *Id.* at 691 (explaining a passenger in a stopped vehicle is not seized when viewing the encounter "through the lens of Article I, section 9" but is seized viewing the encounter "through the lens of the Fourth Amendment"). Similarly, in the board's view, as we understand it, during petitioner's time in the community, he was in two potential states: on post-prison supervision and not on post-prison supervision, with only one of those potential states being reality depending on the temporal lens through which we observe him (*i.e.*, prior to revocation of the commutation or after revocation of the commutation).

[5] That result is certainly not compelled by the sole rule that the board cites in support of its position on appeal—*i.e.*, the OAR 213-005-0002(3), which provides "[t]he term of post-prison supervision shall begin upon completion of the offender's prison term or such term as directed by the supervisory authority."

As the board's order recognizes, in connection with the commutation, "the Board issued an Order of Supervision Conditions, and on February 11, 2021, [petitioner was] placed on [post-prison supervision]." It was at that time petitioner's post-prison supervision began to run. *See Kragt v. Board of Parole*, 373 Or 191, 209, 563 P3d 359 (2025) ("Post-prison supervision begins to run when the offender is released into the community for community-based supervision.").

revocable commutation" or because "a Releasee's continued release in the community no longer serves the interests of the State of Oregon," the Releasee *shall be returned to prison to serve out his or her sentence that was remaining at the time [the] commutation was granted according to the Releasee's Judgment of conviction.*" (Emphasis added.) As the board interpreted it, under that provision, when the Governor revoked petitioner's commutation, petitioner was "required to be returned to [O]DOC to finish the entire sentence that remained at the time of the original conditional commutation," which we understand, in the board's view, to include both the time in the custody of ODOC remaining on petitioner's sentence and the post-prison supervision time remaining on petitioner's sentence (*i.e.*, 36 months) at the time of the commutation.

We have a different understanding than the board of the commutation order. As noted, we understand the Governor to have chosen to incorporate the statutory and regulatory post-prison supervision framework into her commutation of petitioner's sentence. That framework includes the *determinate term* of post-prison supervision that was set by the sentencing court at the time of petitioner's sentencing, and which the board cannot extend. Read in that context, as we understand it, the phrase "shall be returned to prison to serve out his or her sentence that was remaining at the time this commutation was granted" in the commutation order refers to the incarcerative portion of a Releasee's sentence. We see nothing in the commutation order to suggest the Governor intended to nullify wholesale the time a Releasee spent on post-prison supervision in the community if the Governor revoked the commutation.[6]

The board's determination to the contrary may follow from its understanding of a literal reading of the phrase, "the Releasee shall be returned to prison to serve out his or her sentence that was remaining at the time this commutation was granted," because a Releasee's sentence includes both an incarcerative term and a term of post-prison supervision. But such a literal reading of that phrase would also

---

[6] Because we do not read the commutation order to operate in that fashion, we express no opinion on whether a commutation order could lawfully contain such a provision.

require a Releasee whose commutation is revoked to serve out their term of post-prison supervision in prison, something which is an impossibility under the current statutory and regulatory framework. *See Kragt v. Board of Parole*, 373 Or 191, 209, 563 P3d 359 (2025) ("Post-prison supervision begins to run when the offender is released into the community for community-based supervision."). Thus, we think a better reading of the commutation order, which is not particularly artfully drafted, is that a Releasee whose commutation is revoked is required to serve their remaining incarcerative sentence in the custody of ODOC, but that, in calculating their post-prison supervision upon release, they are due credit for the time spent in the community on post-prison supervision.

In sum, we conclude that the board erred in determining that petitioner had not served any time on post-prison supervision and that it was required to order petitioner to serve 36 months of post-prison supervision upon his release from ODOC custody. Instead, it ought to have credited petitioner with the time petitioner had already spent on post-prison supervision. Thus, we reverse and remand the board's order.

Reversed and remanded.